(No. 11483.—Reversed and remanded.)

MARY ALICE RAVENSCROFT, Appellee, *vs.* CATHERINE STULL *et al.* Appellants.

*Opinion filed October 23, 1917.*

1. WILLS—*any fact relating to mental capacity of testator is admissible on will contest.* A party to a will contest has a right to ascertain and present to the jury any fact in relation to the mental capacity of the testator.

2. SAME—*capacity to transact ordinary business not required of testator.* Capacity to transact ordinary business is one of the elements to be considered in determining whether a testator had the capacity to make a valid will, but as a test of mental capacity to make a valid will it is more than the law requires.

3. SAME—*proof of testator's habitual use of intoxicating liquor is admissible on question of mental capacity.* The use of intoxicating liquor on a particular occasion does not have the effect to render a person incompetent to execute a will unless operative at the time of making it, but evidence that a testator was addicted to the habitual use of intoxicating liquor is competent, in a will contest, on the question of mental capacity.

4. TRIAL—*when fact that attorney who drew will did not testify should not be commented on.* It would be a breach of professional propriety for an attorney who is a member of the firm representing the executor, and who drew the will, to testify in a suit to contest the will, and the fact that such attorney did not testify should therefore not be referred to in the argument of the opposing counsel as tending to raise an inference against the validity of the will.

5. SAME—*when it is error to comment on failure of defendant to testify.* It is error for the attorney for the complainant in a will contest case to repeatedly refer in his argument to the failure of the defendant, who was the chief beneficiary of the will, to testify, when he knows she is not a competent witness and has objected to her being allowed to testify.

6. JURISDICTION—*city court has jurisdiction of suit to contest a will.* Under the statute conferring upon a city court concurrent jurisdiction with the circuit court within the city in all civil cases in law and equity the city court has jurisdiction of the statutory proceeding to contest a will by a bill in chancery, as such suit is of the same nature as the previously existing common law right to a contest whenever a will was offered in evidence and property rights were involved.

APPEAL from the City Court of Mattoon; the Hon. JOHN McNUTT, Judge, presiding.

EDWARD C. CRAIG, DONALD B. CRAIG, JAMES W. CRAIG, JR., and WILLIAM M. MORAN, JR., for appellants.

BRYAN H. TIVNEN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Mary Alice Ravenscroft, the only child and heir-at-law of Thomas Gorman, filed her bill in this case in the city court of the city of Mattoon against the appellants, the executor, legatees and devisees under the will of her father, by which he devised to Catherine Stull his residence property in the city of Mattoon and bequeathed to her his building and loan stock remaining after the payment of a mortgage on the property, made bequests of $50 to the Roman Catholic church for masses, $10 to his daugh-

ter, the complainant, Mary Alice Ravenscroft, $1500 to his sister, Mary Hayes, $1500 to his brother, James Gorman, and $500 to his grandson, James Ravenscroft, son of the complainant. The residue of the estate was given to his sister, Mary Hayes, his brother, James Gorman, and Catherine Stull. The bill prayed the court to set aside the probate of the will on the grounds of want of testamentary capacity and undue influence of Catherine Stull. Answers of the executor and Mary Hayes, James Gorman and Catherine Stull were filed, and replications to the answers having been filed, issues were made up whether the testator was of sound mind and memory, whether the instrument was his will and whether it was obtained by undue influence of Catherine Stull. The jury found all of the issues for the complainant and a decree was entered accordingly, from which this appeal was allowed and perfected.

At the trial there was the customary assemblage of persons who had known Thomas Gorman, (counsel have counted them, and there were thirty-two for the complainant and thirty-five for the defendants,) some of whom had met him either frequently or occasionally and some had been intimately associated with him. They gave opinions as to his mental and physical condition, and there was evidence concerning his relations with Catherine Stull and her influence over him. Gorman was foreman of a wrecking crew of the Big Four Railway Company from 1891 to October 15, 1914. He could not read or write, and orders and other matters relating to his duties were read to him, but he could write his name. He was in the habit of drinking intoxicating liquor, and his physical health and mental condition had been seriously impaired before the making of the will. His wife died in 1911, and he lived with his daughter, the complainant, until February, 1913, when he left her home and stayed for a time at his wrecking car, after which he went to the home of his sister, Mary Hayes. For several years he visited Catherine Stull at her home,

and he had bought her a ring and it was understood that they were to be married. He went to live at her house some time before his death and the will was made and he died at that place. After leaving his daughter's home he complained of her treatment of him, and on March 18, 1914, he commenced a suit against her to quiet the title to his home property, in which she claimed some interest. There was no evidence that his charges against his daughter were well founded but the contrary appeared from the evidence. He suffered from chronic nephritis, commonly called Bright's disease, and had become inefficient and incapable of intelligently managing the wrecking business. His mind was largely directed toward intimate relations with women and his language was of a lecherous character. His manner of living and habits had greatly impaired his constitution and weakened his mind, and at least six weeks before his death the disease had reached its final stage. He had dropsy of the legs. The will was made on October 10, 1914, and he died nine days afterward, in a comatose state from the poisons common to the disease. During his stay at the home of Catherine Stull she was extremely kind to him and the evidence shows that she had great influence over him. The will was made at her home, and the daughter was not present at the time of making the will nor in his last illness.

The court did not err in refusing to direct a verdict on either issue nor in refusing to grant a new trial on the ground that the verdict was contrary to the evidence. The evidence, however, was conflicting and the defendants had a right to have it submitted to the jury without material or prejudicial error, and errors have been assigned on the admission and exclusion of evidence. The trial court allowed various witnesses for the complainant to testify that in their opinion Thomas Gorman was not capable of transacting the ordinary business affairs of life. The defendants, as proponents of the will, had examined a large number of witnesses and inquired of each one whether Gorman was capa-

ble of understanding and transacting the ordinary business affairs of life, and the witnesses had expressed the opinion that he had that degree of capacity. The complainant would have had a right, in any view of the law, to meet the opinions of those witnesses by testimony that Gorman did not have that degree of capacity. It is true that one who has sufficient mind and memory to attend to the ordinary business affairs of life is capable of making a will, but such a test is higher than the law requires. The transaction of ordinary business involves a contest of judgment and experience and the exercise of mental powers in dealing with other persons not necessary to the testamentary division of property, (*Rowcliffe* v. *Belson,* 261 Ill. 566,) but a party to a will contest has a right to ascertain and present to the jury any fact in relation to the mental capacity of the testator and the strength of his mental powers. Witnesses may be asked as to the ability of a testator to transact ordinary business, as that is one of the elements to be considered in determining whether he had the capacity to make a valid will. (*Coleman* v. *Marshall,* 263 Ill. 330.) Such evidence is competent and legitimate, but the jury must finally determine the question of testamentary capacity under the rule of law and with the proper test. In this case the court instructed the jury that it is not necessary that a man should be capable of understanding and transacting the ordinary business affairs of life, and the final test was correctly explained to the jury. On both the grounds stated there was no error in the ruling.

The court admitted evidence of declarations made by Gorman four or five years previous to his death concerning his intention to give his property and money to James Ravenscroft, son of the complainant. Such evidence had no tendency to show the mental condition of Gorman at the time the will was made, which was the avowed purpose of offering it, and it was too remote to be admissible for any purpose. It was error to admit it.

It is further contended that the court erred in allowing evidence of the habit of Gorman of drinking intoxicating liquor, on the ground that there was no evidence that he was intoxicated when he made the will. The use of intoxicating liquor on a particular occasion does not have the effect to render a person incompetent to execute a will unless operative at the time of making it, but the evidence that he was addicted to the habitual use of intoxicating liquors was competent, for the reason that, as a matter of common knowledge, such use would impair the faculties of body and mind, and in this case the evidence fairly tended to prove that his habit had produced or contributed to that result.

There is a great deal of argument concerning the giving and refusal of instructions, but we are not disposed to review the great number of instructions given, which were unnecessary, and which would impose an unreasonable burden on the court. Simple statements of the rules of law governing the questions of mental capacity and undue influence would have been entirely sufficient in place of numerous lengthy instructions, many of them amounting, in substance, to arguments. The first instruction offered by the defendants was refused, and it is insisted that the refusal was wrong. The meaning of it, as applied to the case, was that confidential relations between Gorman and Catherine Stull, and the fact that she was substantially benefited by the will, did not change the burden of proof, and unless undue influence was proved by a preponderance of the evidence, and that it was directly connected with the making of the will and destroyed the free agency of Gorman, the jury should find against undue influence. It practically eliminated the elements of confidential relations and substantial benefit, which were material to be considered on the question, and it was not error to refuse it. The court gave to the jury an instruction that they had a right to consider the use of intoxicating liquors by Gorman, together with all the other circumstances of the case in evidence, for

the purpose of determining whether he had the mental capacity to make the will. The instruction was right for the reason already stated, and that it was right is recognized by an instruction given at the instance of the defendants telling the jury that unless they believed that Gorman was under the influence of intoxicating liquor at the time of executing the will, or that from the use of it his mind had become impaired so that he was not mentally capable of making a will, they should disregard the evidence. Both instructions called attention to particular evidence, and there was no difference between them in that respect. An instruction given for the complainant told the jury that if Gorman was of unsound mind and memory when he executed the will they should find that the writing was not his will, even though they might further believe, from the evidence, that he was able to enter into conversation with some of the witnesses on the day of making the will. This instruction tended to belittle the testimony of witnesses present at the time the will was made, of conversations with Gorman, and it was error to give an instruction affecting the judgment of the jury as to whether the conversations tended to show testamentary capacity. It is not necessary to review any other instructions.

James W. Craig, Jr., an attorney at law, prepared the will in question and was present at its execution, and he was a member of a firm representing the executor in this case. The attorney for the complainant, in his argument to the jury, repeatedly stated: "Where is James W. Craig, Jr.? Why didn't he testify? If he believed that Thomas Gorman was of sound mind he would have been here testifying. Why didn't Catherine Stull testify?" To this sort of argument the defendants objected, but the trial court overruled the objections and allowed the attorney to continue such argument. For James W. Craig, Jr., to have testified would have been a breach of professional propriety, and if he had so far forgotten his duty and obligation as

an attorney but little weight would have been given to his testimony and he would have lost public confidence and respect and the respect of the courts. (*Ross* v. *Demoss,* 45 Ill. 447; *Wilkinson* v. *People,* 226 id. 135; *Bishop* v. *Hilliard,* 227 id. 382; *Grindle* v. *Grindle,* 240 id. 143; *Wetzel* v. *Firebaugh,* 251 id. 190.) If he had testified he would have exposed himself to an assault by the same attorney for placing himself in an unprofessional position, and the conduct of the attorney was a flagrant abuse of the privilege of argument to the jury, who, not knowing that it was improper for the attorney to testify, had a right to believe that he did not testify because he did not believe that Gorman was of sound mind and memory or that the will was not caused by the influence of Catherine Stull. The court gave an instruction to the jury that for an attorney to testify was a reprehensible practice and the jury should not indulge any presumption against the validity of the will because the attorney interested in the outcome of the suit did not testify. The instruction was directly contrary to the ruling of the court, and at any rate did not meet the serious error committed in not promptly sustaining the objection and stopping the course of argument. Besides the argument concerning Craig the attorney repeatedly asked why Catherine Stull did not testify, when he knew that she was incompetent and had in fact objected to her testifying, and as to her there was no instruction designed to obviate the error. When Catherine Stull was offered as a witness the attorney objected and the objection was sustained, and the fact that she was not conducted to the witness stand was of no importance whatever.

The defendants moved in arrest of judgment on the ground that the city court of Mattoon had no jurisdiction of the subject matter. The statute confers upon a city court concurrent jurisdiction with the circuit court within the city in which the same may be, in all civil cases, both law and chancery, and the ground of the motion was that this is not

a civil case in law or chancery but a purely statutory proceeding not existing in the original jurisdiction of chancery courts. In considering such jurisdiction in *Brueggemann* v. *Young,* 208 Ill. 181, it was said that the class of cases mentioned as civil cases in the first section of the City Court act was intended to include only law cases and equity cases as they were known to the common law, and such other cases since provided for by statute as belong to the same class or are of the same nature as previously existing actions at law or in equity, in which personal or property rights are involved and where a remedy for the recovery of property or for damages occasioned by an infringement of a right is given. There was a right to contest a will at the common law but no method was provided for a single contest. Where lands were devised and the heir or devisee brought a suit, the devisee claiming under the will was required to prove it as well as the capacity of the testator to make a devise, and there could be a contest every time a will was offered in evidence. (*Dibble* v. *Winter,* 247 Ill. 243.) Our statute provides for a contest by the filing of a bill in chancery wherein an issue of law is to be made up whether the writing produced be the will of the testator or testatrix or not, and the issue is to be tried according to the practice in courts of chancery. The jurisdiction invoked is not the general equity powers of the court but a special statutory jurisdiction providing a method for trying, at the suit of any person interested, the validity of a writing alleged to be a will. The suit is of the same nature as the previously existing right to a contest whenever a will should be offered in evidence and property rights are involved. The court did not err in overruling the motion in arrest of judgment.

The decree is reversed and the cause remanded.

*Reversed and remanded.*