Blanche Jacobson, Plaintiff-Appellant, v. National Dairy Products Corporation, a Corporation, and Thomas J. Pinter, Defendants-Appellees.

**Gen. No. 48,175.**

First District, First Division.
August 21, 1961.

Louis G. Davidson, of Chicago, for appellant.

Theodore A. Groenke and David J. Gibbons, of Chicago (Snyder, Chadwell, Keck, Kayser & Ruggles, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Blanche Jacobson, sued Thomas J. Pinter, driver of a car which allegedly struck and injured her, and National Dairy Products Corporation, Pinter's employer and the owner of the car. Judgment was entered on a jury verdict in favor of defendants, and plaintiff appeals.

Plaintiff was walking north on the east side of Broadway about ten o'clock in the morning of April 17, 1958, when she attempted to cross Broadway about 100 feet south of its intersection with Addison Street. She testified that as she stepped off the curb at this point into the street she saw the defendant's car parked facing north about four or five feet north of her, and she had no indication that it was going to move. She looked both ways for traffic and glanced at the traffic light which she said was red for Broadway traffic, and had taken three or four steps when she saw the car backing towards her and very close. She tried to get out of the way but the car struck her and knocked her into the street. She was unable to get up, and was taken to a hospital where she was found to have a spinal fracture.

Police Officer Hayslip testified that he arrived on the scene of the accident at about 10:35 a. m. and attempted to find the injured party and the driver of the car involved. He found neither, and went to the hospital where plaintiff had been taken. He returned to the scene about 11:00 a. m. and continued to search for information regarding the car by inquiring at nearby stores. From a description of the car and the number of the license plate given him by Miles Berliant, the owner of a cleaning shop, he traced the car

39

to the National Dairy Products Corporation, Pinter's employer, which led to Pinter's apprehension several days later.

Berliant testified that he had been standing in front of his store waiting for his driver when he saw a light blue Pontiac pull into the bus zone and stop. He identified Pinter as the driver of the car. He saw plaintiff, who was walking north on Broadway, go to the curb, look both ways, and step off into the street. He testified that Pinter's car was stopped for a time and after plaintiff had walked two or three feet in the street, he saw Pinter's car start backwards towards plaintiff. He yelled to the driver to stop, but the car continued backing up and struck plaintiff. He said he called the police and went to the aid of plaintiff.

On the day of the accident, Pinter was making calls for his employer in a company car, and one of his calls was in the vicinity of Addison and Broadway. He testified that as he drove north on Broadway he saw that the two metered parking spaces on the east side of Broadway south of Addison were both occupied, but that the car in the space nearest Addison Street was about to leave. He pulled into a bus zone in front of the space and backed to within three or four feet of the other car. That car then backed up in order to pull around Pinter, and turned east on Addison.

Pinter was driving a light blue 1954 Pontiac, and he said the other car was a 1952 or 1953 black Oldsmobile. He testified that he had turned around with his right arm on the back of the front seat and was looking out the rear window. He had his foot on the brakes and his backing lights were on, and when the other car had left he continued to back into the space at two or three miles per hour. He was about three quarters of the way into the space when he heard someone shout to stop. He stopped the car and got out, and saw plaintiff lying on the street about five feet in back of his car. He testified that he had not

40

seen plaintiff while he was backing the car, that he felt no impact, and that he found no marking on the back of his car although it was dirty. He testified that he waited while the ambulance took plaintiff away, made his call, and then returned to his car and waited fifteen or twenty minutes for the police to arrive in case he could be of assistance as a witness. He said that he finally left when the police did not arrive, but first left his business card for the police with a man standing nearby.

██ We have set forth the evidence of the occurrence witnesses in some detail since both sides insist that the evidence compels a verdict in their favor. Plaintiff contends that the verdict is contrary to the manifest weight of the evidence, while defendants claim that a verdict for the plaintiff would be contrary to the manifest weight of the evidence, particularly concerning plaintiff's contributory negligence, and that any possible error is therefore harmless since no other result could have been reached. We hold that Pinter's negligence and plaintiff's contributory negligence under the evidence were both debatable questions of fact properly left to the jury to decide.

Plaintiff's main contention on appeal is that a number of improper questions and prejudicial remarks made by defense counsel deprived her of a fair and impartial trial and that this misconduct necessitates a new trial.

██ It was brought out at the trial by Officer Hayslip that the information he received from the hit-and-run department led to the discovery of the name and address of Pinter. Hayslip testified that he saw Pinter for the first time at the court hearing at 321 North La Salle Street where Berliant identified Pinter as the driver of the car. On cross-examination defense counsel sought to inquire into the court hearing. Upon objection, defense counsel stated before the jury, "I thought we should get into this court hearing." This

objection was heard out of the presence of the jury and defense counsel stated in chambers that he "intended to question Officer Hayslip to show what transpired at the police court hearings and *to bring out the ultimate disposition of that matter.*" The trial court properly ruled that these proceedings were inadmissible except for impeachment or to show interest, and instructed defense counsel not to go into these proceedings for other purposes. Defense counsel then continued his cross-examination of Officer Hayslip in the presence of the jury by stating, "as I was saying, Mr. Hayslip, at the time just before we had this little recess, we had seen each other before, and I stated I had seen you in court involving my client. I am not going to pursue that line of examination any further." Later, during his cross-examination of Berliant, defense counsel asked if he told Judge Ferguson, the Judge in the prior proceedings, that he didn't think Pinter was a hit-and-run driver. An objection was sustained. He then asked that Berliant tell what he told Judge Ferguson and another objection was sustained. He then said, "well then, I won't pursue that examination any further."

In his closing argument to the jury, defense counsel stated that plaintiff's counsel had accused Pinter of being a hit-and-run driver, but that "I repeatedly asked Mr. Pinter to explain that situation and never once was I given an opportunity to explain it to you . . ." He later returned to this theme, saying that Pinter had "laid himself open to the hit and run charge, and we have tried to explain that and as you know under the rules of law we cannot do that." Plaintiff objected, whereupon defense counsel stated that plaintiff's counsel "has persisted to call the man a hit-and-run driver and I never had a chance to explain that he was not." These remarks were stricken, and defense counsel stated, "That is enough of that."

42

We think that defense counsel was quite successful in making it plain to the jury that he had important information concerning the earlier proceedings which he wished them to know, but that the plaintiff was denying them the opportunity of hearing that evidence. The earlier references to hit-and-run by no means justified this course of conduct. Counsel was plainly instructed not to go into these proceedings, but he insisted on keeping this prohibition before the jury, accomplishing by inferences what he could not do directly.

 Such conduct has been recognized as cause for reversal in this State, regardless of whether the court has ordered the remarks stricken or not. Crutchfield v. Meyer, 414 Ill 210, 111 NE2d 142; Forest Preserve Dist. of Cook County v. Alton R. Co., 391 Ill 230, 62 NE2d 701; Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216. We regard counsel's remarks as unjustified and highly prejudicial, particularly in view of defendant's attempt to infer that it may have been the other car which hit plaintiff. The information which plaintiff is pictured as denying to the jury regards other court proceedings conducted under different rules of law which would be particularly impressive to the jury. A jury might well conclude that if defendant Pinter was found not guilty of being a hit-and-run driver in the police court, it indicated that the judge there concluded that Pinter's car was not the one that backed into and struck the plaintiff and that it was a case of mistaken identity. Where the liability is sufficiently close so that the jury might reasonably have returned a verdict for either party, the trial must be conducted in an orderly manner so that the jury will not be improperly influenced. Mattice v. Klawans, 312 Ill 299, 143 NE2d 866; Paliokaitis v. Checker Taxi Co., 324 Ill App 21, 57 NE2d 216. We hold that the possibility of prejudice

caused by counsel's remarks is so great here that plaintiff is entitled to a new trial.

■ Our decision is reinforced by numerous other improper remarks defense counsel made during the course of the trial. He referred to plaintiff's financial position during his closing argument, calling her "obviously a woman of some means." He also attempted to disparage the motives behind the suit, stating that plaintiff would "take every last thing she can get away with in this court room today . . . and let us look at the tactics that someone has engaged in to keep this lady here at age seventy for two weeks to get a sum of money. . . . In every instance this plaintiff has grasped and reached for as much as she can get away with . . ." Again speaking of plaintiff's tactics, he states, "I don't think I am talking to this plaintiff, I am talking about somebody who wants to get rich on her, sitting here in ten days of court." These remarks were uncalled for and prejudicial. See Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249.

■ Counsel also stated in his closing argument, "Let us start on this issue with the testimony of Mr. Berliant. Plaintiff's counsel held this picture in front of you for a good part of his opening statement and you will note that this picture shows nothing in the window. It shows a clearance sale sign and this pickup was taken on September 10th, during this trial and plaintiff's counsel has not once called to your attention the fact that this picture was taken during the trial and in view of that fact *I can tell you that I was at this store on Saturday and the window was full of store dummies.*" Such a statement of fact by counsel is improper and prejudicial. Vujovich v. Chicago Transit Authority, 6 Ill App2d 115, 126 NE2d 731.

Plaintiff has raised other points on this appeal particularly with regard to instructions, but we do not

44

deem it necessary to consider these issues. For the reason stated above, the judgment of the trial court is reversed and the cause is remanded for new trial.

Reversed and remanded.

MURPHY, P. J. concurs.