**Alice Bulleri and Larry Bulleri, Plaintiffs-Appellees, v. Chicago Transit Authority, Defendant-Appellant.**

**Gen. No. 48,505.**

First District, First Division.
April 15, 1963.
Rehearing denied June 3, 1963.

William J. Lynch, William S. Allen, Paul Denvir and Jerome F. Dixon, all of Chicago, for appellant.

Philip E. Howard, Riordan & Brown, and George W. Alexander, all of Chicago (John C. Gekas, of counsel), for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Judgment was entered against defendant on a jury verdict for $25,000 in a suit for personal injuries. The primary point raised on defendant's appeal is that the closing argument to the jury by plaintiff's attorney

was so improper and prejudicial as to require a new trial.

■ A contention of this character cannot be considered in the abstract, but only in relation to the situation as it existed in the trial when the argument was made. We shall, therefore, refer briefly to the evidence.

Plaintiff * was the sole occurrence witness on her own behalf. She testified that at about 1:00 a. m. she had boarded an eastbound CTA bus at Mayfield and 63rd Streets in Chicago, intending to go to work in a restaurant owned by her and her husband at 6325 S. Central. There were two other passengers on the bus.

Plaintiff testified further that about a half block from Central, she rose and said, "Central, please" to the driver, and stood in the front of the bus waiting for it to stop; that the bus stopped at a well-lighted corner by a bank, and the door opened; that she started to get off and as she got down to the last step she felt a big jerk, the driver moved the bus "real fast" and she was thrown off to the pavement, sustaining injuries.

The bus driver and a passenger were occurrence witnesses on behalf of defendant. The driver testified that after he had stopped the bus he opened the door and plaintiff got off; that he was stopped by a red light and waiting for it to turn green; that plaintiff had walked 15 to 20 feet east when she stopped at a manhole cover on the sidewalk and slumped to the ground "as if she squatted," and gave a yell; that he ran to help her up and was assisted by policemen who came in a few seconds; that her shoe heel was broken and stuck in the manhole cover; that he did not move the bus from the time she started to alight until she had fallen.

---

* Alice Bulleri. Her husband was also a party to the complaint, but the case did not go to the jury as to him.

The bus passenger testified that he was sitting in the second or third seat from the front on the right-hand side next to the window; that when the bus stopped he saw a lady get off; that after she got off the door closed and the bus started to pull away when she hollered; that she was on the sidewalk.

It can thus be seen that the evidence was in sharp conflict as to the facts bearing on the central issue of negligence. In consequence, the jury might have determined this issue either way, and, in further consequence, it is important that the jury not be influenced by any improper conduct by counsel so prejudicial as to deprive either party of a fair trial. (Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 43–44, 176 NE2d 551; Mattice v. Klawans, 312 Ill 299, 143 NE 866.)

■ ■ Near the outset of his closing argument, plaintiff's attorney commented on the burden of proof instruction which would be given to the jury by the court. In this regard he told the jurors: "If at the conclusion of the evidence you have any doubt in your mind, you are entitled to resolve those doubts in favor of Alice Bulleri."

Upon objection by the attorney for defendant, the court said, "You may proceed." More specific objection then being made, the court again, in effect, overruled the objection by directing plaintiff's attorney to continue.

The latter then made this statement to the jury: "If you folks have any doubts in your minds regarding any facets of this case you are entitled to resolve them in the favor of Alice Bulleri if you think the greater weight of evidence is in her favor."

That a plaintiff's burden of proof does not involve the resolving of doubts in his favor is a proposition so fundamental as not to require citation. The first statement quoted above and the expanded one made after

100

objection are both erroneous and highly prejudicial statements of this proposition of law. By lending its weight to these repeated misstatements, the court, in effect, adopted them as its instructions to the jury on this point of law, and thereby joined with plaintiff's attorney in impinging upon defendant's right to a fair trial.

■ ■ Later in his argument to the jury, plaintiff's attorney read from what purported to be a transcript of testimony.* Timely objection was made and overruled.

We consider without merit plaintiff's contention that the reading complained of was permissible, because, defense counsel had, in his argument, without objection, read an excerpt from the testimony of another witness.

The practice of reading to the jury from an unproven transcript is undesirable and far beyond the proper scope of closing argument. It was, therefore, not within the court's discretion to permit it over objection in this case. (Heide v. Schubert, 166 Ill App 586; Westgate v. Aschenbrenner, 39 Ill App 263.)

■ For the avowed purpose of counteracting defense counsel's argument to the jurors that they must not permit themselves to be influenced by sympathy for the underdog, plaintiff's attorney made the following statement to the jury:

> . . . He said now don't be with the underdog, I know the American spirit is with you, I know you are with the underdog, but not mine, not my people, please.
>
> If I may give a simile, it's like something in the coming presidential election. Let's take a Catholic and Mr. Kennedy. And they keep harp-

---

* There had been, of course, no proof or certification of the accuracy of this document.

ing, don't vote just because he's a Catholic. Pretty soon if we harp enough on it, I don't suppose, I better not vote for him because I'm a Catholic and people will think I am harping on it.

An objection by defendant's attorney was overruled.

Regardless of whether the argument complained of was (as claimed by defendant) or was not (as claimed by plaintiff) a clear request for support from Catholic or Democratic jurors, it had nothing whatsoever to do with the issues of the case. The unnecessary injection of religious or political questions into a case of this nature diverts the jurors from judicial consideration of the facts and the law, regardless of whether their response may be friendly or antagonistic. Comment on these matters is difficult to eradicate from the jurors' minds when it is stricken and the jury is instructed to disregard it. Here, however, it was not stricken, and the objection was overruled. We believe this was error. (Wagner v. Macelli, 297 Ill App 633, 17 NE2d 236; Panteles v. Arsht, 227 Ill App 488; Peoria, B. & C. Traction Co. v. Vance, 234 Ill 36, 84 NE 607; McWilliams v. Sentinel Pub. Co., 339 Ill App 83, 89 NE2d 266.)

 On cross-examination of defendant's driver, plaintiff's attorney elicited testimony that the witness had made a written report of the accident to his employer. The report had not been mentioned on direct examination. On redirect the driver testified that he had not seen the report from the date it was made until the Sunday prior to the trial when he had discussed it with defendant's attorney, thereby refreshing his recollection.[*]

In this regard, plaintiff's attorney said, in closing argument:

---

[*] Plaintiff's attorney made no demand to see the report.

Let me stick with Mr. Grissett [the bus driver]. Mr. Grissett didn't remember anything two weeks ago but he remembered now. How does Mr. Denvir try and and explain that? By the fact he looked at the report last Sunday. That brought the whole thing back. *Well, we didn't have the benefit of the report. He didn't bring the report in.* (Emphasis supplied.)

At this point a motion for a mistrial was made and denied, and the jury was instructed to disregard the last statement. Thereupon plaintiff's attorney said to the jury, "Use your common sense." Objection to this statement was overruled.

Then plaintiff's attorney continued:

Does it sound reasonable that when he made out that report and in it was purse in right hand was on ground, does it sound like anybody would put that in the report?

Again objection was made to reference to the contents of the report, and again it was overruled.

█ We are urged to find justification for this part of the argument, in the line of cases declarative of an attorney's right to comment on the failure of the opposite party to produce evidence. (McNeff v. White Eagle Brewing Co., 294 Ill App 37, 13 NE2d 493; In re Sandusky's Estate, 321 Ill App 1, 52 NE2d 285; Beery v. Breed, 311 Ill App 469, 36 NE2d 591.) These cases are based upon the unfavorable inference which arises logically from a party's failure to produce evidence available to him when that evidence might determine an issue in the case. (Barker v. Barker, 36 Ill App2d 20, 26, 183 NE2d 518.)

█ The fallacy of relying on these decisions in the case at bar, however, is the absence here of a necessary ingredient of the rule; namely, that the evidence which

a party has failed to produce must not only be available to him but also must be admissible. (Ravenscroft v. Stull, 280 Ill 406, 117 NE 602; Forest Preserve Dist. of Cook County v. Alton R. Co., 391 Ill 230, 62 NE2d 701.)

██ Defendant's brief sets forth the obviously correct proposition that the report of the bus driver, a self-serving document, would not have been admissible on defendant's behalf. By not attempting an answer, plaintiff has conceded this point. The report being inadmissible, we consider it to have been highly prejudicial for plaintiff's counsel to comment as he did upon its absence, thus inviting the jury to conclude that defendant was voluntarily withholding from the jury something which would be damaging to its cause.

██ Plaintiff's attorney also argued to the jury from facts in his own knowledge which had not been testified to by any witness. For example, he stated to the jury that a CTA doctor, Dr. Petty, had been in the courtroom, and had not testified, intending thus to be commenting further on defendant's failure to present evidence under its control. We believe that it would have been proper for counsel to point out the absence of defense medical testimony, but improper (without supporting evidence) to refer to a particular doctor by name, and inform the jury that he had been present at the trial.

Again, in the argument of plaintiff's attorney, he stated that a police officer had given to Mr. Bulleri a certain CTA accident card (in evidence) of a type given by bus drivers to policemen. Plaintiff says that this was proper because the statement was made in answer to defense counsel's argument. In her testimony plaintiff had said that she did not get the card from the policeman. Defense attorney had commented on this in his argument by asking where it came from, if not from the policeman.

■ Answers to questions thus put in argument must be founded on the record, and such a question does not present to opposing counsel a valid excuse to argue from his own knowledge of facts not in evidence. (Appel v. Chicago City R. Co., 259 Ill 561, 570, 102 NE 1021; Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 44, 176 NE2d 551.)

Both these comments on matters outside the record were improper, and prejudicial to defendant.

■ Defendant also submits that plaintiff's attorney made an improper comment upon defense counsel's argument to the jury on the question of damages. Defense attorney had made this argument to the jury:

> I say to you, ladies and gentlemen, that this demand of $62,000 is not made in good faith. . . . I say to you it is for the purpose of having any one of you adopt that sum or a sum less than that and then work for a compromise. Then we will say, we will cut the $60,000 in half and it's $30,000, and we cut $30,000 in half and you get $15,000, and you cut the $15,000 in half and you get $7500. I still say, by that time you think you have made a big concession but whether or not that it is entitled to $7500 or $3750 or $1800 is not for counsel to tell you.

Plaintiff's attorney replied:

> Mr. Denvir has accused me of not having suggested a figure in good faith. Let me say that the figure was suggested in good faith. When I suggested it I told you it wasn't binding on you, that you people are the only ones. I can't tell you what is fair. Mr. Denvir can't tell you what is fair. Mr. Denvir said that I intended it to be cut up and brought up in different pieces. That isn't so. I didn't intend that. *He had it cut up so it was down to $7500.* Her expense alone, her lost

time and her medical expenses alone, not including anything else, is $6,000. *And he said that would be fair.* That's ridiculous and I didn't intend that and I didn't say that. (Emphasis supplied.)

Mr. Denvir: Your Honor, I made no statement $7500 would be fair. I have to appeal to the court on this.

The objection was overruled. It can be seen from the quotations above that defense counsel had not stated that $7500 or any other amount would be fair. Such a misstatement by plaintiff's attorney could hardly have been unintentional. It was unwarranted and prejudicial.

██ Without minimizing the importance of any single instance of improper argument which we have referred to in this case, we should like to point out that the cumulative effect of these arguments in combination was grossly prejudicial and, in our opinion, requires a new trial.

██ In conclusion on this point we adopt the language of another Division of this court in Durkin v. Lewitz, 3 Ill App2d 481, 123 NE2d 151, where it was said at page 495:

[These] are errors which have a long and dishonorable tradition in jury trials. However, in this day when courts are overwhelmed with this type of practice and three or four years is required to bring a personal injury case to trial, it behooves those who practice in that branch of the profession to direct their attention with rigid self-discipline to the fair presentation of their case, to the elimination of all side play, and to the avoidance of the extreme either in the presentation of evidence or in argument. This is no longer a matter of professional idealism; it is a necessity, if the

work of the court is to be transacted in the public interest.*

■ Defendant also argues on this appeal that four instructions offered by it were improperly refused by the trial court. Since this case is to be retried, we should state that, in our opinion, these instructions were properly refused. They may be correct statements of law and their use may have been approved in the past, but they are, nevertheless, argumentative in nature or repetitious of matters already covered in other instructions. They are, therefore, out of keeping with the general purposes endorsed by the Supreme Court in the publication of IPI.

Other errors alleged have not been considered for the reason that the same questions are not likely to arise on another trial.

Reversed and remanded.

BURMAN, P. J. and MURPHY, J., concur.

---

* In the Durkin case the court decided to overlook the errors referred to, and did not reverse the judgment because it concluded that the substantial facts were not seriously controverted and the issue was not close.