**Joseph Svoboda, et al., Plaintiffs-Appellants, v. William Blevins, Defendant-Appellee.**

**Gen. No. 49,925.**

First District, First Division.

October 17, 1966.

H. P. Hutul, of Chicago, for appellants.

Hubbard, Hubbard, O'Brien & Hall, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs appeal from a not guilty verdict and judgment for defendant in their tort action and seek a new trial. Their principal contention is that they did not receive a fair trial, because of the prejudicial misconduct of defendant's counsel during the trial.

There is no dispute as to the occurrence. On December 15, 1960, plaintiffs, who worked together as truck drivers, were on their way home from work in an automobile owned and driven by plaintiff Svoboda. They had stopped and were waiting in a line of traffic for an intersection traffic light change, when their car was struck from the rear by an automobile driven by defendant.

The evidence for plaintiffs consists of testimony by plaintiffs and their attending physician, Dr. Gerald J.

Rabin, who had been recommended to them by their attorney. Defendant was interrogated as an adverse witness under section 60 of the Civil Practice Act. Both plaintiffs testified as to head and neck pains and loss of time at work. There was no evidence as to lost pay or automobile repairs. Dr. Rabin testified that his charges for Roper were $145 and for Svoboda $344, and both bills were unpaid. He also testified that Svoboda had a hospital bill of $129.40. Defendant presented no evidence.

Defendant's attorney commenced his cross-examination of plaintiff Roper, by questioning him about a finger injury which occurred two years prior to the trial and, after ascertaining that the doctor who treated Roper for his finger was not his present physician, asked, "And, you didn't call up your attorney, Mr. Hutul, and ask him to get the name of a doctor?" An objection was sustained. In chambers and out of the presence of the jury, the court said, "The only issues in this case, who was responsible for this accident and was this man hurt? Those are the issues." The cross-examination was resumed with a series of questions about Mrs. Roper working for a medical center and whether Roper had consulted a doctor at the medical center or gone to the clinic "for anything as a result of this accident." Objections were overruled, and Roper's answer "No" was permitted to stand.

Defendant's attorney, over repeated objections and in the presence of the jury, continued his questioning as to how Roper happened to go to Dr. Rabin and how he made contact with his attorney of record. At one point the attorney remarked to the court, "I think your Honor, this man was sent to a doctor by a lawyer." His questions to Roper included, "The attorney told you to take a couple [weeks] off work, didn't he? . . . Did you tell the attorney your wife worked for a medical center? . . . Did she [Mrs. Svoboda] tell you that they had heard that you could get good results from a lawsuit by Dr. Rabin?"

When Roper said, "I had an examination and several X-rays . . . ," the next question was, "Did Doctor Rabin tell you that or did the attorney tell you that?"

At one point the court, in sustaining an objection, said, "Counsel, I am going to admonish you to discontinue asking the witness questions in regard to the alleged conversations between the witness and with the witness and the lawyers. . . . I am giving you my admonition, let's get on with it."

The cross-examination of plaintiff Svoboda followed the same line of questions—as to how he made contact with his attorney and Dr. Rabin. The record is replete with the sustaining of objections made to these questions and with the court striking the remarks of defendant's counsel. When the court asked the relevancy of the question, "Who was the lawyer that was recommended to you?", the attorney for the defendant responded, "I believe the issues in the case are the injuries of this man and that this is not a bona fide claim. I think I have the right to try and show this." In final argument, counsel referred to plaintiffs as "those other two palookas."

We conclude that this record sustains plaintiffs' contention that defendant's counsel "engaged in improper conduct, made improper remarks, conducted his interrogation of the witnesses along improper lines of questioning, and improperly interjected his opinions into the case during the trial and during his final argument." This court, in Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551 (1961), said (p 43):

> "Such conduct has been recognized as cause for reversal in this State, regardless of whether the court has ordered the remarks stricken or not."

A trial should be conducted with dignity and without prejudicial conduct of counsel. Obviously defendant's counsel was endeavoring to use the trial as an inquiry into the assumed unethical conduct of plaintiffs'

attorney and physician. This was an inquiry that should have been presented to the proper professional associations and not used as a vehicle "to inflame the passions or arouse the prejudices of the jury" in order to defeat plaintiffs' action. As the court noted, the only issues were plaintiffs' damages and the responsibility of defendant, if any. We believe this record comes within the remarks made by our Supreme Court in Coal Creek Drain. and Levee Dist. v. Sanitary Dist., 336 Ill 11, 167 NE 807 (1929), at p 45:

> "Argument of counsel is for the purpose of assisting the jury fairly, deliberately and impartially to arrive at the truth of the facts submitted to them for their decision, and it is highly improper for an attorney to do or say anything in argument the only effect of which will be to inflame the passions or arouse the prejudices of the jury against one of the parties without throwing any light upon the question for decision. (People v. Bimbo, 314 Ill 449.) Litigants are entitled to a fair, dispassionate and impartial trial, and counsel who overstep the bounds of propriety in argument and so prevent such trial have no ground for complaint when courts of review correct their misconduct by granting new trials."

We conclude that plaintiffs' motion for a mistrial should have been allowed and a new trial granted. For the reasons given, the judgment in favor of defendant is reversed and the cause is remanded for a new trial.

Reversed and remanded.

KLUCZYNSKI, P. J. and BURMAN, J., concur.