KEVIN LEE SELLERS *et al.*, Minors, by Delmar Wayne Sellers, their Father and Next Friend, Plaintiffs-Appellants, *v.* PAULA D. HENDRICKSON, formerly Paula D. Simmons, Defendant-Appellee.

Third District   No. 75-203

Opinion filed March 18, 1977.

Alan Marsh, of Ottawa, for appellants.

George Hupp, of Ottawa, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal is by plaintiff-appellant, Ernest Sellers, from a judgment of the circuit court of LaSalle County entered upon a verdict finding in favor of defendant, Paula Hendrickson. There is also a cross-appeal by defendant Hendrickson from a judgment *n.o.v.* entered against defendant and in favor of plaintiff, Kevin Sellers.

This action was brought by Delmar Wayne Sellers, as father and next friend of Kevin Lee Sellers and Ernest Sellers, to recover damages for personal injuries allegedly caused by the negligence of defendant Hendrickson in driving her automobile. The jury found in favor of

defendant Hendrickson and answered special interrogatories finding defendant not negligent as to each of the plaintiffs and finding plaintiff Ernest Sellers guilty of contributory negligence. The trial court entered an order finding defendant was guilty of negligence as a matter of law. The court vacated the jury's answers to the interrogatories finding defendant not negligent as to each of the plaintiffs on the grounds the answers were against the manifest weight of the evidence. The court did not disturb the special interrogatory as to the contributory negligence of Ernest Sellers. Kevin Sellers was a minor under seven years of age and therefore legally incapable of contributory negligence. The verdict against him and in favor of the defendant was vacated and judgment was entered for the plaintiff Kevin Sellers and a trial ordered on the question of damages alone. The court found the jury's answer to the interrogatory finding Ernest Sellers guilty of contributory negligence and the general verdict in favor of defendant and against plaintiff Ernest Sellers, to be supported by the evidence and affirmed that judgment.

The accident in question occurred in Streator, Illinois on April 1, 1968. Defendant was driving south upon a two-lane one-way south street at a speed of between 20 and 25 miles per hour. The street was a State route and the speed limit was 30 miles per hour. She testified she saw neither of the plaintiffs prior to the accident. There was traffic to the right of her as she traveled in the left lane and the only obstruction to her view was the other traffic to the right of her. The accident occurred about 30 feet north of an intersection. Plaintiff heard a thud, stopped her automobile, got out and found the two plaintiffs lying in front of the car. Just prior to the accident she was not looking at anything specific but merely looking where she was driving. She did not brake her vehicle, turn or utilize any preventive maneuver prior to the impact. It was the center of her car which came in contact with the two plaintiffs. The area in which the accident occurred was residential and in the general location of two schools. Defendant was familiar with the area and was aware of the fact it was residential and heavily traveled by students going to and from their respective schools. The accident occurred at approximately 3:15 p.m.

Defendant testified that just prior to the accident there were other cars in the left lane of Bloomington Street in front of her car and other cars in the right lane to the side of her but she did not know exactly where. She did not recall any cars neck and neck with her on the street nor any specific car in the left lane ahead of her. The plaintiffs were on the west side of the street proceeding from the west side to the east side and therefore coming from defendant's right to her left. Plaintiff Ernest Sellers was running across the street at the time of the accident. He admitted not looking before running across the street. The accident occurred 25 to 35 feet north of the next intersection to the south and therefore not in any cross-walk area.

Matthew Sellers, an older brother of the plaintiffs who was an eyewitness to the occurrence in question, testified at a pretrial deposition that he and his two brothers, the plaintiffs, were on the west side of the street when a semi went by and that the plaintiffs took off running and got nailed. He further testified at the deposition that he did not see the car involved in the accident because of the semi in the west lane and the car was just about right behind it and he did not see the car until it hit his brothers.

Elmer Kruger testified that on April 1, 1968, he was on his way home from work driving his car in a southerly direction near the intersection of Grant Street and Bloomington Street in Streator. As he approached the intersection of Grant Street he was traveling in the right hand lane and he saw Ernest and Kevin Sellers standing on the curb waiting to cross Bloomington Street from west to east. There were other children on the right hand side of the sidewalk. The two plaintiffs stepped off the curb about a half a block ahead of him. They were about 25 to 50 feet north of the intersection. When he saw the children running across the street in a northeasterly direction he let up on the accelerator in order to give them plenty of time to get across. He stated by running he meant they were moving just faster than a walk. He was in the right hand lane and there were no other vehicles in the right hand lane ahead of him between himself and the children. He saw the car driven by defendant which was traveling south 25 to 50 feet ahead of him on the left hand side. There were some cars ahead of her but he didn't recall how close they were and there were no cars in the right hand lane that were parallel to her car. He did not see any car in the right hand lane ahead of defendant. The children were close together when they were hit by the front of defendant's car. He testified he was aware the collision would occur when the children were directly in front of him after they had started across the street. The defendant's car was about 8 or 10 feet from the left curb just prior to the accident. There was no obstruction to his visibility in the right hand lane and he didn't see any vehicles other than defendant's in or about the scene. The actual impact occurred in the center of the eastern most south bound lane at about 25 to 35 feet north of the intersection.

Setting aside for the moment the question of the admissibility of certain evidence, we shall first deal with the issue whether the general verdicts of the jury in favor of defendant Paula Hendrickson and against the plaintiff Ernest Sellers and plaintiff Kevin Sellers were supported by the evidence.

As indicated earlier, the jury found in favor of defendant Hendrickson with respect to the claims of each plaintiff. Thereafter pursuant to post-trial motion the court found the defendant Hendrickson guilty of negligence as a matter of law. Consistent with this determination the trial court granted Kevin Sellers a new trial on the issue of damages only since

because of his age he could not be guilty of contributory negligence. The court agreed with the jury's finding on the special interrogatory that Ernest was guilty of contributory negligence and consequently judgment in favor of the defendant was continued even though for different reasons. The initial appeal is by Ernest Sellers in which he insists the trial court was correct in finding the defendant guilty of negligence as a matter of law but in error in holding the jury's verdict finding him guilty of contributory negligence was supported by sufficient evidence. The cross-appeal by defendant Hendrickson raises the primary issue as to the propriety of the court's order finding Hendrickson guilty of negligence as a matter of law and a subsidiary issue whether in any event a new trial should have been limited to the issue of damages alone.

The first issue which we believe should be resolved in order to effectively consider the case as a whole is the question of whether the court erred in finding the defendant Hendrickson was guilty of negligence as a matter of law. The standard applicable to the trial court's action is that as enunciated in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504. We do not believe it necessary to restate the *Pedrick* rule nor do we believe it necessary to restate the facts which have earlier been set forth in this opinion at some length.

■■ It is our conclusion that whether defendant Hendrickson exercised her duty to keep a proper lookout was a disputed question of fact which was properly submitted to the jury for resolution. The testimony of the defendant, that of the independent witness Kruger, as well as the physical circumstances existing at and prior to the incident, are subject to conflicting inferences, particularly when they are assessed with regard to the conduct of the plaintiffs themselves. Under these circumstances we believe the court erred in declaring the defendant to be guilty of negligence as a matter of law. We likewise believe that whether Ernest Sellers was guilty of contributory negligence was also a matter peculiarly within the province of the jury to resolve and we believe it would be improper to hold that he was or was not in the exercise of due care for his own safety as a matter of law.

Having held the trial court erred in its determination the defendant was guilty of negligence as a matter of law, further questions arise concerning the propriety of the original jury verdicts. More particularly, these questions are raised by the plaintiffs and their assertions that they were prejudicially deprived of a fair trial by erroneous rulings on evidence by the trial court.

The next issue is whether the trial court erred in allowing defendant to impeach her own witness, Matthew Sellers, the brother of the plaintiffs by proof of prior inconsistent statements made by Matthew Sellers at a pretrial discovery deposition.

The trial court invoked Supreme Court Rule 238 which reads as follows:

> "If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination. The party calling an occurrence witness, upon showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements."

This rule contains two parts, one relating to the cross-examination of hostile witnesses and the other relating to the impeachment by proof of prior inconsistent statements of an occurrence witness by the party calling him. We note a hostile witness may or may not be and need not be an occurrence witness; an occurrence witness may or may not be and need not be a hostile witness.

The portion of the rule allowing the calling party to impeach the witness by proof of prior inconsistent statements does not change any of the rules relating to impeachment. If the former statement is made by a witness, other than a party to the action, the statement which is claimed to be inconsistent must be identified to the witness and the circumstances of time and place of the making of the statement indicated. (Gard, Illinois Evidence Manual, R. 484 (1963); McCormick, Evidence § 37, at 72 (2d ed. 1972).) The purpose of this rule is to protect the witness against unfair surprise and to provide him with an opportunity to explain the statement with which he is confronted. (*People v. Henry,* 47 Ill. 2d 312, 265 N.E.2d 876, McCormick, Evidence § 37, at 72 (2d ed. 1972).) If the witness admits making the prior inconsistent statements the impeachment is complete. If the witness either denies making the prior statements or has no recollection thereof, then introduction of the statements duly authenticated is required.

In the instant case Matthew Sellers was called as a witness by defendant. He testified he didn't know if he saw any vehicles on the street other than the car that came in contact with his brothers. Defense counsel asked "Are you saying that you didn't see the semi * * *." Plaintiffs' attorney objected on the ground the question was leading and the court sustained the objection. Outside the presence of the jury a hearing was held and the court decided to allow defendant to cross-examine on that point. Defense counsel then asked the witness if he recalled his deposition. Plaintiff objected and the court overruled the objection on the ground it appeared the witness was hostile or at least that his memory should be jogged in view of his deposition. The following then occurred:

> "Q. Do you recall, Matthew, that we took your deposition on the 10th day of July, 1974?
>
> A. Yes.

Q. Do you remember that?

A. Yes.

Q. Do you remember that the attorneys for your brothers were present at that time?

A. Yes.

Q. And that Mr. Daugherity here, who sits next to me, he asked you certain questions about this accident at that time. Do you recall that?

A. Yes.

Q. Do you recall giving him a version of how this accident occurred? Do you recall giving Mr. Daugherity at that deposition—

A. Yes.

Q. Do you remember now what that version was that you gave Mr. Daugherity?

A. That I saw a semi; that the end of that I said I wasn't absolutely positive."

Following this defendant's counsel continued to question Matthew regarding the presence of the semi.

■■ In the instant case Matthew Sellers admitted making the statements as claimed in the deposition. At this juncture it can be said the impeachment was complete and the facts concerning defendant's credibility were established. After acknowledging that he had made the prior statements concerning the semi the witness then, pursuant to questions by defense counsel, testified directly concerning the location and existence of the semi, the conduct of his brothers and his vantage point. Under these circumstances we perceive no error occurred in the questioning and testimony of this witness.

There was further assignment of error regarding the cross-examination of Matthew Sellers but since this was not raised in the post-trial motions, error, if any, is waived.

The next issue we need deal with on this appeal is whether it was prejudicial error for the lower court to allow, over plaintiffs' objection, evidence of testimony offered by defendant, upon direct and cross-examination, concerning scholastic deficiencies and misconduct, lack of education or social achievement, character defects, mental defects and environmental retardation and other conditions of the mental, cultural or social ill-being of the brothers and sisters of the minor plaintiffs. Plaintiffs in the trial court made a motion in limine to prohibit and exclude any testimony offered by defendant pertaining to any learning deficiency or problem, lack of educational or social achievement, character defects, or mental defects, environmental retardation or any other condition of mental, cultural or social ill-being of any of the brothers or sisters of Kevin

and Ernest Sellers absent expert testimony establishing its relevancy. The trial court denied the motion and defendant at the trial elicited testimony from a social worker in the Streator elementary system in which the Sellers children had received their education. This witness testified he had consulted with both plaintiffs and their older brother regarding a variety of social behavioral problems. He testified at length about the attitudinal problem of Kevin Sellers and his destructive behavior and nonrecognition of other peoples' rights and that environmental factors existing within the family itself and inherited genetic factors were the root of the behavioral problems manifested by the plaintiffs. Testimony was also given that two sisters of the plaintiffs attended an educable mentally handicapped class in the Streator elementary system six years prior to the time of the occurrence. Matthew Sellers during direct examination by defendant was questioned about his under-achievement at school and eventual removal from the family home and confinement in the county detention home.

Plaintiffs argue the effects of the introduction of the aforesaid evidence concerning the condition of the various members of the Sellers family was prejudicial. He argues that absent unique circumstances domestic affairs of the parties are irrelevant and often prejudicial in a suit to recover compensatory damages for personal injuries. (*Payne v. Noles,* 5 Ill. App. 3d 433, 283 N.E.2d 329; *Jacobson v. National Dairy Products Corp.,* 32 Ill. App. 2d 37, 176 N.E.2d 551.) In *Payne,* an action concerning a collision of a car and motorcycle, the claim of error was made as to testimony of plaintiff's family circumstances. Payne testified his wife and little girl were with him in his car and over objection his lawyer asked him the age of the little girl and the condition of his wife, receiving the responses that his child was three years of age and his wife was six months pregnant. The trial court allowed the answer on the basis it showed that under the circumstances Payne would not be traveling at a high rate of speed. The court held it was error to allow such testimony since absent some unique circumstances which render such evidence admissible, domestic affairs of the parties are irrelevant and often prejudicial in a suit to recover compensatory damages for personal injuries. *Jacobson v. National Dairy Products Corp.,* 32 Ill. App. 2d 37, 176 N.E.2d 551, is also distinguishable from the case at bar.

The plaintiffs claim as an element of their damages that they suffered learning deficiencies caused by the injury sustained by them at the time of the accident in question. They called as their chief witness to establish this element of damage a child neurologist and psychiatrist who had examined Ernest at the request of his attorneys. Ernest was given a neurological examination, including evaluation of his mental state. The doctor expressed an opinion that Ernest's defective memory patterns may affect his learning which in turn can restrict the extent of education which

he may obtain, and by the same token the problem in reading could produce the same thing. On cross-examination defendant's counsel extracted from the doctor his opinion that home environment would contribute to a learning deficiency and that the lack of proper emotional stimulation and interaction between the parents and children are things involved in a home environment which can result in a learning deficiency.

■■ A hypothetical question, which is the next issue to be discussed, was presented to the doctor by defense counsel. The entire cross-examination by defense counsel and the issues raised by that cross-examination were not objected to by plaintiffs' counsel. Defendant produced the testimony of a specialist in medical neurology which included extensive training in the field of psychiatry. His opinion was that from his examination the physical problems found were not incapacitating in any way. The same hypothetical question was presented to this doctor. The plaintiffs' counsel objected to the question by stating "objection on many grounds." The objection was overruled and the doctor was allowed to answer. The doctor testified achievement in school depends on a number of different factors. He conceded it would be reasonable a child could have problems on the basis of the hypothetical circumstances set out in the question. The doctor suggested that several possible reasons or a combination would result in under achievement, including emotional disturbances, particularly those that might center around problems of behavior. The crux of plaintiffs' argument is that the jury's verdict reflected prejudice caused by testimony relating to the delinquency, social misconduct and scholastic deficiencies of the Sellers children. Plaintiffs argue such evidence was irrelevant. However, it was an element of the plaintiffs' claim for damages that plaintiffs had suffered learning deficiencies. The evidence presented suggests a cause for plaintiffs' learning disabilities other than the alleged injuries caused by the accident. Accordingly, we cannot hold that such evidence was irrelevant.

■■ The next and related issue in whether it was prejudicial error for the trial court to allow the opinion testimony of Doctor Bruce Ehmke in answer to a hypothetical question containing evidence in testimony of misconduct, scholastic and mental deficiency and deleterious effect of the home environment of plaintiffs and their brothers and sisters. Over plaintiffs' objection Doctor Ehmke was allowed to answer the following questions by defendant's attorney: "Doctor, based upon a reasonable degree of medical and scientific certainty in such matters as environmental, hereditary, sociological associations, sociological effect of those associations and environment, can they in and of themselves cause a low academic performance without the interference or without the

occurrence of any injury whatsoever?" Plaintiffs argue there was no showing of causal connection between the conduct and performance in school of plaintiffs' sisters and brothers and the physical and mental condition of plaintiffs at the time of trial and therefore the admission of the testimony was error. Doctor Ehmke is a doctor specializing in medical neurology which is a specialty medicine concerning diseases and injuries involving the nervous system including the brain, spinal cord and various nerves throughout the body. At no time did plaintiffs make any objection at the trial to the competency of Doctor Ehmke or his qualifications as an expert. The general objection made at the end of the hypothetical question to the effect that the objection was based on many grounds is not sufficient to raise the question as to whether the witness has the necessary qualifications of an expert. (*Mack v. Davis*, 76 Ill. App. 2d 88, 221 N.E.2d 121.) In *Mack* defendant claimed the witness was not qualified as an expert and there was insufficient evidence to provide the basic data for the witness to reconstruct and give an opinion as to what happened. The court held a general objection to a question was not sufficient to raise these issues but only raised the question of relevancy and materiality. Examination of the record shows the facts included in the hypothetical question to Dr. Ehmke did have support in the record. The question tended to show there could be another cause for the learning disabilities of plaintiffs. Accordingly, it tended to negate the claim that plaintiffs' learning disabilities derived from the accident. The question was both material and relevant and although it can be said plaintiffs waived the question of the qualifications of the expert witness, an examination of the record shows Dr. Ehmke was qualified as an expert. Accordingly, the trial court did not error in allowing the hypothetical question to be posed to defendant's expert Doctor Ehmke.

■■■ Finally, the plaintiff argues the trial court committed reversible error by submitting to the jury defendant's special interrogatory #1, which reads as follows:

> "1. Was the plaintiff, Ernest Sellers, guilty of the failure to exercise that degree of care for his own safety required of him under the instructions of the Court, which proximately contributed to his injury?"

Plaintiff argues this interrogatory did not limit its inquiry to a period before and at the time of the occurrence. However, no objection to this interrogatory on that ground was made or specified at the conference on instructions, or during the trial, and therefore that part of his argument is waived. However, plaintiff also argues the effect of this interrogatory fails to give proper emphasis to the presumption that Ernest Sellers was not contributorily negligent, in other words, he argues the interrogatory embodies an assumption of a controverted fact, *i.e.*, whether plaintiff,

Ernest Sellers, had the mental capacity and experience to act negligently. A special interrogatory must be considered together with and in light of other instructions of the court. (*Bruske v. Arnold*, 100 Ill. App. 2d 428, 241 N.E.2d 191, *Havlovic v. Scilingo*, 7 Ill. App. 3d 918, 289 N.E.2d 79.) In light of the other instructions of the court relating to the presumption of the inability of the plaintiff, Ernest Sellers, to be capable of contributory negligence, we hold the interrogatory in question was proper and not misleading or confusing.

For the foregoing reasons the judgment of the circuit court of LaSalle County entered upon the verdict in favor of defendant and against plaintiff Ernest Sellers is affirmed. The judgment entered in favor of plaintiff Kevin Sellers and against defendant is reversed and remanded with directions to enter judgment in accord with the verdict in favor of defendant.

Judgment affirmed in part and reversed in part.

ALLOY, P. J., and STENGEL, J., concur.