Philip Solomon, a Minor, by Sol J. Solomon, His Father and Next Friend, Plaintiff-Appellant, v. The Fair, a Corporation and United Parcel Service of Illinois, Inc., a Corporation, Defendants-Appellees.

Gen. No. 48,620.

First District, Second Division.
June 25, 1962.

Hennig & Croft and Joseph L. Goldberg, of Chicago (Joseph L. Goldberg, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, all of Chicago (Frederick W. Temple and Max E. Wildman, of counsel), for defendant-appellee, United Parcel Service, and Harry I. Parsons, of Chicago (Sidney A. Wilson, of counsel), for defendant-appellee, The Fair.

MR. JUSTICE BURKE delivered the opinion of the court:

Plaintiff appeals from an adverse judgment on a verdict in his action to recover damages alleged to have been caused by the negligence of the defendants. On December 11, 1952, Philip Solomon, the plaintiff, was 33 months old. He resided with his parents in a four room apartment at 1152 South Keeler Avenue, Chicago.

He had been in good health. On December 9, 1952, Mrs. Solomon ordered, by telephone, a bedframe from The Fair, a defendant. Delivery of this frame was made by United Parcel Service, Inc., another defendant, on December 11, 1952, on behalf of The Fair.

The Solomon apartment was on the first floor of a three flat building. It had front and rear entrances. The delivery was made through the front hallway. The front doorway of the apartment opened into a common narrow hallway. Upon entering the apartment the hallway extended to the dining room on the right and to the living room on the left. Beyond the dining room was a kitchen and adjoining the living room was the bedroom. At the time the frame was delivered, between 4:30 and 5:00 p. m., Philip's mother was preparing dinner in the kitchen. Philip was watching television in the living room. When the doorbell rang the mother inquired "who was there" and the deliveryman responded "The Fair." When she went to the door Philip also ran there. After the door was opened the deliveryman, wearing the uniform of the United Parcel Service, Inc., took two steps into the apartment and placed the unwrapped bedframe against the hallway wall at an angle lengthwise with its legs facing half way into the hallway. Mrs. Solomon did not have any conversation with the driver after she opened the door, nor did she tell him where to place the bedframe. The hallway of the apartment was 37 inches wide and the wall against which the bedframe was placed was 42 inches wide.

About one hour after the delivery Mrs. Solomon heard a thud and found Philip lying flat on his face with his left leg straddling one of the legs of the bedframe and his left eye next to the adjoining leg. Other than the bedframe there were no objects or obstructions in the hallway. The bedframe was not moved from the time of delivery until Philip fell. His left

190

eye was discolored and closed. As a result of this occurrence, Philip was hospitalized and his left eye was surgically removed. He is compelled to wear a plastic eye which must be changed periodically as he grows.

The Fair rested without calling any witnesses. The United Parcel Service, Inc., called Frank Blasak, a deliveryman who was employed by it in December of 1952. He had occasion with at least one other person to make deliveries in the area which included the Solomon apartment. Although Blasak had no independent recollection of this delivery and could not say whether he or his helper delivered the bedframe, he was permitted to testify as to his custom and habit with respect to due care and caution in making other similar deliveries. He also was permitted to testify that he placed bedframes wherever people directed him to place them. Philip's father was not at home at the time of the delivery.

It was uncontradicted that the bedframe was placed in the hall in the only position in which it could stand. On cross-examination Mrs. Solomon could not recall whether she was in the kitchen preparing dinner at the time of the delivery or in the hallway using the telephone. In her deposition she stated that during the delivery Philip was in the living room watching television. At the trial she testified that Philip came to the door at the time of the delivery but went back to watching television in the living room. Mrs. Solomon offered no explanation as to why she did not have the bedframe set up in the bedroom. She testified that she did not move the frame. Blasak testified that it was the custom of employees of United Parcel Service, Inc., to unwrap furniture outside and place it "wherever the people asked us to, even bedframes." Although he had a helper he stated that the driver always took charges and C.O.D.'s. The delivery of the frame

to the Solomon apartment was a "charge" transaction. Blasak was cross-examined extensively by plaintiff's counsel as to his observance of the rules of the company and stated his unvarying observance of them.

In arguing for a reversal plaintiff contends that the court erred in receiving the testimony of Frank Blasak, citing Shaw v. Corrington, 171 Ill App 232, 234; City of Salem v. Webster, 192 Ill 369, 372, 61 NE 323; and Quincy Gas & Electric v. Clark, 109 Ill App 20, 23. He insists that evidence as to the degree of care ordinarily employed by a person in the course of his employment to show by inference the care he exercised on a particular occasion is never proper except where direct evidence is not obtainable. In Shaw the defendant sought to prove by witnesses that he was a competent and careful chauffeur. The court held that the reputation of a person involved in an accident for carefulness, competency or skillfulness is not admissible on the question of his negligence in the absence of direct evidence on the question. In Webster defendant attempted to prove by a witness that plaintiff was ordinarily a rapid driver. The Supreme Court said (372):

"There was direct testimony as to the rate of speed at which plaintiff was driving, and consequently the offered evidence was not competent. It is only in cases where there is no direct testimony as to the conduct of a person at a particular time that resort may be had to inferences as to such conduct, arising from the ordinary habits or general character of such person as to care and caution."

In Quincy Gas & Electric the court erred in allowing testimony as to the deceased being a careful man in the performance of his duties as a lineman. The court noted that in that case there were eyewitnesses and hence the fact that the deceased was a careful man

192

on other occasions was immaterial. In Campbell v. Chicago, R. I. & P. Ry. Co., 243 Ill 620, 90 NE 1106, the court said (624):

"It is true that negligent acts do not cease to be negligent because they are frequent, but proof of a customary method of doing an act by those who are frequently and habitually required to perform it is some evidence as to whether the method is or is not negligent."

In Fowler v. Chicago Railways Co., 285 Ill 196, 120 NE 635, the court said (201):

"Plaintiff in error contends that the court erred in refusing to strike out the answer of the witness, because evidence of a custom is not competent upon the issues of negligence and contributory negligence. The evidence was competent, and the court did not err in its ruling."

██ We do not think that the cases cited by plaintiff are applicable to the factual situation in the case at bar. Blasak had no specific recollection of the incident. He delivered the furniture personally as to items which were charged, such as the bedframe in the instant case. The admissibility of evidence of similar acts or occurrences as probative of the commission or existence of a particular act or condition depends on the facts of each case. We are of the opinion that under the facts in this case the trial judge was right in admitting the testimony of Frank Blasak.

█ We turn to plaintiff's contention that the court erred in giving an instruction setting forth the issues. There is a typographical error in the instruction. The instruction told the jury that plaintiff further claims that the United Parcel Service was negligent in "improperly placing the bed stand against the wall in the hallway outside the plaintiff's home with the legs of the bed facing outward." We are of the opinion that

193

no confusion could have resulted by the use of the word "outside" in place of the word "inside" as there was no dispute among the parties as to the placing of the bed-frame. Plaintiff could not have been prejudiced by the typographical error.

██ Finally plaintiff urges that the court erred in the same instruction stating that "the occurrence in question was an accident which occurred without carelessness on their part." When the court defines the issues there is seldom need of an instruction on the subject of an accident. We are satisfied, however, that under the facts in the instant case the court did not err in giving the instruction on an accident without carelessness of defendants. Philip could not be guilty of contributory negligence and his mother's negligence, if any, may not be imputed to him. There was no evidence of negligence on the part of either defendant. The bedframe was placed in the only position it could have been placed in the hallway. Stood on end, the frame would have been as much of a hazard to Philip in any other room.

We do not find any reversible error. Therefore the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J. and FRIEND, J., concur.