VERONICA GASIOROWSKI, Plaintiff-Appellant, *v.* FRED HOMER, Defendant-Appellee.

First District (1st Division) No. 62181

Opinion filed March 28, 1977.

Beermann, Swerdlove, Woloshin & Barezky (Miles N. Beermann, of counsel), for appellant.

Pretzel, Stouffer, Nolan & Rooney, Chartered (Timothy J. Gillick and Joseph B. Lederleitner, of counsel), for appellee.

Mr. JUSTICE BUA delivered the opinion of the court:

Veronica Gasiorowski brought suit for personal injuries allegedly suffered as a result of the negligent operation of a motor vehicle by the defendant, Fred Homer. The plaintiff, a pedestrian, was crossing Belmont Avenue between Lockwood and Long Avenues in Chicago when she was struck by the defendant's automobile. A jury returned a verdict in favor of the defendant, and in response to a special interrogatory indicated its finding that the plaintiff was guilty of contributory negligence. Judgment was entered on the verdict. On appeal from that judgment and the denial of her post-trial motion, the plaintiff-appellant contends that the trial court committed reversible error in three respects: (1) by its limitation of the scope of plaintiff's *voir dire* examination of prospective jurors regarding possible bias against pedestrians crossing streets in midblock, (2) by its refusal to permit the plaintiff to recall the defendant for further examination as an adverse party, and (3) by its refusal to admit certain proffered evidence as to the plaintiff's "habits of due care, industriousness, and sobriety." We find these contentions to be without merit.

As regards the first of these alleged errors, it is not argued that the plaintiff was completely denied any opportunity to question prospective jurors about their attitudes toward pedestrians crossing streets in midblock. It is clear that plaintiff's counsel, with the express permission of the court, drew the jurors' attention to the fact that this case involved a pedestrian struck by an auto as she was attempting to cross a street in midblock rather than at a pedestrian crosswalk, and then asked each juror whether there was anything about this situation which might prevent him from viewing the evidence in an open-minded and impartial manner. The trial court refused, however, to permit the plaintiff in this same vein to ask certain questions concerning the jurors' own related experiences. Specifically, the court did not permit the plaintiff to ask prospective jurors, (1) whether they had ever seen pedestrians crossing streets in midblock, (2) whether they, as pedestrians, had themselves ever crossed streets in midblock, and (3) whether, if they had as pedestrians crossed streets in midblock, they felt that their behavior on those occasions had been "reasonable." The plaintiff now urges that the court's refusal to permit questions (1) and (2) constituted reversible error.

■■ It is well established that limitation of *voir dire* questioning may constitute reversible error where its effect is to deny a party a fair opportunity to probe an important area of potential bias or prejudice among prospective jurors. (*People v. Lobb* (1959), 17 Ill. 2d 287, 161 N.E.2d 325; *People v. Moore* (1972), 6 Ill. App. 3d 568, 286 N.E.2d 6;

*Turner v. Wallace* (1966), 71 Ill. App. 2d 160, 217 N.E.2d 11.) However, once such a fair opportunity is afforded, it lies within the trial court's discretion to deny further questioning on the matter. (*Jines v. Greyhound Corp.* (1964), 46 Ill. App. 2d 364; *United States v. Staszcuk* (7th Cir. 1974), 502 F.2d 875.) And indeed, it may be serious error for the court to *fail to* cut off *voir dire* which becomes an attempt to indoctrinate or pre-educate jurors (*Scully v. Otis Elevator Co.* (1971), 2 Ill. App. 3d 185, 275 N.E.2d 905; *Osborne v. Leonard* (1968), 99 Ill. App. 2d 391, 240 N.E.2d 769; *Christian v. New York Central R.R. Co.* (1960), 28 Ill. App. 2d 57, 170 N.E.2d 183) or to obtain a pledge as to how they would decide under a given state of facts, or determine which party they would favor in the litigation. *Murphy v. Lindahl* (1960), 24 Ill. App. 2d 461, 165 N.E.2d 340.

■■ In view of this statement of the law, we find that the trial court's action was not only within the bounds of sound discretion, but was eminently fair as well. While we agree that it was incumbent upon the trial court in this case to permit the plaintiff to adequately ascertain the attitudes of prospective jurors regarding pedestrians crossing in midblock, we are not convinced that the court failed to do so. Quite the contrary, the adequacy of the inquiry permitted by the court appears clearly from the record.

First, the examination of those jurors who indicated that they would not be biased in their decisions illustrates beyond a doubt that they understood the general nature of the factual situation involved and the thrust of counsel's inquiry into bias. The cases of veniremen O'Brien and Novak are typical:

"EXAMINATION BY PLAINTIFF'S COUNSEL OF VENIREMAN O'BRIEN

\* \* \*

Q: Mr. O'Brien, you have heard when you were sitting in the back of the room the very brief statement of what this case was about, it that correct?

A: Yes.

Q: You understood it was a pedestrian crossing in midblock, an automobile involved and the lady was injured? \* \* \* I had asked the other jurors whether the fact that this involves a pedestrian crossing in mid-block would affect their judgment in this particular case. In other words, do you have a preconceived idea before the case even starts or any evidence is introduced, as to who is right and who is wrong?

A: Nothing one way or the other.

\* \* \*

EXAMINATION BY PLAINTIFF'S COUNSEL OF
VENIREMAN NOVAK

\* \* \*

Q: Mr. Novak, how about yourself, anything about this business of the pedestrian in the crosswalk that bothers you?

A: No.

Q: Each of you have heard this phrase of pedestrians in the crosswalk or out of the crosswalk many times but there is real concern hidden in the back that might be something that you don't acknowledge but it is so important that it might be an absolutely level start. Would yours be that way, Mr. Novak?

A: Yes.

\* \* \*"

Secondly, it is worth noting that a number of jurors, when questioned within the bounds prescribed by the court, were moved to admit a bias against pedestrians crossing in midblock, and were dismissed for cause. This is a further indication of the sufficiency of the *voir dire*.

Thus, we find that the trial court permitted the plaintiff to adequately question prospective jurors regarding this area of potential bias. A direct and unambiguous inquiry into attitudes and predispositions evoked direct and apparently honest responses from the various jurors. The trial court was well within the bounds of its discretion in concluding that in such a situation it was not necessary to permit plaintiff's counsel to conduct what would amount to a cross-examination of the jurors.

The situation here is essentially similar to that in *Turner v. Wallace* (1966), 71 Ill. App. 2d 160, 217 N.E.2d 11. In *Turner*, the plaintiff's counsel was prevented from questioning a juror as to whether she had "ever experienced pain," as part of an attempt to ferret out bias against awarding damages for pain and suffering. Rejecting plaintiff's contention on appeal that this had prevented fair inquiry into the prospective juror's state of mind, the appellate court said:

"In the present case, the court did not prohibit counsel from inquiring about the prospective juror's attitudes on pain, or as to whether she had any preconceived religious or philosophic tenets on the subject. \* \* \* *Counsel could have ascertained the juror's attitudes merely by asking her about her attitudes rather than her experiences*. We do not think, on the whole, that he was deprived of a fair opportunity of examining the juror on any appropriate matters." (Emphasis added.) 71 Ill. App. 2d 160, 170, 217 N.E.2d 11, 15.

■■ Beyond this, we find the trial court's ruling to have been wise in view of the potential for prejudice inherent in the questions the plaintiff

sought to ask on *voir dire*. Questions which tend to put prospective jurors in the place of the parties to the litigation open a wide range of possibilities for indoctrination or pre-education of jurors, and lend themselves all too easily to attempts to obtain some positive indication as to which party the jurors might favor. This can well be seen in the present case. Before the trial court ruled out questions as to the jurors' own experiences with pedestrians crossing in midblock, the plaintiff, after eliciting one juror's admission that he had himself crossed streets in midblock, went on to ask that juror whether he felt that his conduct on those occasions had been "reasonable." The *only* legitimate function of *voir dire* examination is the selection of an impartial jury. Such attempts to go beyond this function and use the process as a means of affecting the minds of jurors and/or of selecting jurors already harboring certain predispositions, threaten in a fundamental way the ideal of a fair trial, and, where possible, should be frustrated at an early stage.

In order to respond to plaintiff's second and third contentions, it is necessary to consider briefly certain portions of the evidence presented at trial. A number of witnesses were called to testify by the plaintiff. The testimony herein relevant can be summarized as follows:

The plaintiff testified that about 4:30 p.m. on November 27, 1970, she was riding in an automobile driven by her husband, Boleslaw Gasiorowski, heading west on Belmont Avenue. It was drizzling. Mr. Gasiorowski parked the car on the north side of Belmont Avenue between Lockwood Avenue, to the east, and Long Avenue, to the west. The plaintiff then got out of the car, walked around behind it, and proceeded south into the empty westdound traffic lane of Belmont Avenue. She was taking a bag of clothes to a cleaner's shop on the south side of Belmont, just across from where her husband had parked. As she approached the middle of Belmont Avenue she stopped a foot or so before reaching the center line. She let some eastbound traffic pass. From that time until she "woke-up" in a hospital, the plaintiff had no recollection.

The defendant was called by the plaintiff to testify as an adverse party under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) He testified that he was familiar with the area where the accident occurred, and identified three photographs produced by the plaintiff as correctly portraying the scene of the accident on November 27, 1970. He testified that he was driving east on Belmont Avenue. He had just passed Long Avenue, which is about one-half block west of the point where the accident occurred. When he first saw the plaintiff she was crossing Belmont Avenue, going from north to south, approaching the center line. At this time the plaintiff was approximately 45 to 50 feet east of his car, about even with the next car ahead of him in the eastbound lane. As soon as he saw her he took his foot off the gas and began to brake. This braking

began about 30 feet to the west of a fire hydrant located on the south side of Belmont Avenue and shown in the plaintiff's photographs. The pavement was wet, and his car skidded a few feet, but as he reached the fire hydrant he was able to swerve to the right. This was possible because there were no cars parked along the curb for some distance to the east of the fire hydrant. The car stopped some 30 feet to the east of the fire hydrant, about six feet after striking the plaintiff. It came to rest about three feet to the south of the center line, facing east but with the front end angled slightly toward the south. The plaintiff fell in the eastbound lane, also about three feet from the center line, and about six to ten feet from the point where the car had stopped.

Richard Ribaudo, an employee in a shop located on Belmont Avenue in the immediate vicinity of the accident, testified that he had occasion to be present at the scene after the accident occurred. It was raining or drizzling. The plaintiff was lying on her side in the middle of the street, partially covering the center line. There was a car stopped in the east bound lane about 10 to 15 feet from the plaintiff. It was facing directly east. A number of people had gathered in the area and traffic was backing up.

Stan Gorski, a Chicago police officer assigned to the accident investigation unit, testified that on November 27, 1970, at about 4:30 p.m. he was called to the scene of an accident at or near Belmont and Lockwood Avenues. A pedestrian who had been injured in the accident was lying in the middle of Belmont Avenue, partly north and partly south of the center line. The vehicle involved was stopped in the eastbound lane a few feet from the pedestrian. There were cars parked on both sides of Belmont Avenue where the accident occurred.

Leo Kozlowski testified that he is the assistant foreman at Bodine Electric Company, and was in that capacity the plaintiff's supervisor. The plaintiff worked as an inspector in the motor department at Bodine Electric. Mr. Kozlowski had observed the plaintiff at work, but never in any social situation or on a street. The court refused to permit Mr. Kozlowski to testify as to the plaintiff's habits of care, industriousness, and sobriety.

Dr. Spyros Dallas, an orthopedic surgeon who had treated the plaintiff's injuries, testified to the extent of those injuries, the treatment he used, and to the fact that the plaintiff's loss of memory regarding the accident might have been a result of the injuries she sustained.

Before resting, the plaintiff asked the court's permission to recall the defendant for further examination as an adverse party. Permission was denied. The defendant called no witnesses, but merely placed into evidence two exhibits, a photograph of the scene of the accident and a letter from a physician who had treated the plaintiff for her injuries. After

the defense rested, the plaintiff again sought to recall the defendant. Plaintiff's counsel explained that he wished to question the defendant regarding the photograph which the defendant had placed into evidence. The court again denied permission to recall the defendant.

■■ The plaintiff's second contention is that the trial court committed reversible error in refusing plaintiff's requests to recall the defendant for further examination as an adverse party. It is argued that, because the defendant was the only eyewitness retaining his recollection of the incident, it was the duty of the court to permit "wide latitude" in questioning the defendant, and that in light of this, the court's action was an abuse of its discretion. However, we find in the record no indication of what facts the plaintiff wished to prove by further examination of the defendant, nor do we find any indication of how the plaintiff hoped to impeach the defendant in the course of this examination. Plaintiff's counsel simply stated that he had forgotten to ask a few questions of the defendant, and later added that he wished to question the defendant regarding the photograph which the defendant had placed into evidence. Given this, and in view of the full and unrestricted development, by way of the prior section 60 examination, of the defendant's testimony concerning the scene of the accident as well as the actual occurrence itself, it was within the discretion of the trial court to conclude that a recall of the defendant would yield only cumulative testimony.

The plaintiff seeks to rely on *Spence v. Commonwealth Edison Co.* (1975), 34 Ill. App. 3d 1059, 340 N.E.2d 550. In *Spence,* error was found in the trial court's limitation of the re-examination of a witness under section 60. *Spence* is distinguishable from the present case, however, in that the examining party sought, by recalling the witness, to introduce specified evidence which would have contradicted the witness' earlier testimony on a crucial point. *Based on the nature of this evidence* the appellate court was able to say that because of its relevance to the accuracy and credibility of the witness' testimony it should have been admitted. In the present case, we can only speculate as to what, if anything, plaintiff's counsel might have established through further examination of the defendant. In such a situation we see no justification for assigning error to the entirely reasonable hypothesis that a mere repetition of the defendant's previous testimony would have resulted.

Rather than drawing analogy to the *Spence* case, we find the logic of *Gillespie v. Norfolk & Western Ry. Co.* (1972), 3 Ill. App. 3d 779, 278 N.E.2d 420, to be more appropriate under the present facts. In *Gillespie,* it was found that the court's complete refusal to permit the plaintiff to examine one of the defendant railroad's employees under section 60 was not reversible error since the plaintiff had called that employee as her

witness and had elicited from him on direct examination the same testimony as he would have given if called under section 60. The propriety of the trial court's ruling in the present case would seem to follow *a fortiori* from the holding of *Gillespie.*

The plaintiff's final contention is that the trial court erred in its refusal to permit the plaintiff's work supervisor to testify as to plaintiff's "habits of due care, industriousness, and sobriety," and in its refusal to give instructions relative to such testimony. It is argued that such evidence was necessary in order to afford the plaintiff a reasonable opportunity to prove herself free from contributory negligence, since she had no recollection of the accident itself, and since only the defendant could testify as to the actual occurrence. We find this contention, like the others, to be without merit.

■■ First, the trial court correctly determined that this witness was not competent to give testimony as to the plaintiff's habits of care in situations sufficiently similar to that in which the accident occurred. The witness admitted that he had never observed the plaintiff in any situation outside of her work at the Bodine Electric Company. Of the activities in which the witness had had an opportunity to observe the plaintiff engage in the course of her employment the only one even remotely similar to crossing a street as a pedestrian was her walking about the Bodine Electric Company plant.

■■ ■ Secondly, even if it is assumed that Mr. Kozlowski was competent to testify as to the plaintiff's relevant habits of care, such evidence would not be admissible here. The cases in Illinois have established that where there are no eyewitnesses to an accident, or where the only eyewitnesses are silenced by death, amnesia, mental incompetency, or the Evidence Act (Ill. Rev. Stat. 1975, ch. 51, par. 2) evidence of the plaintiff's pertinent habits may be admitted on the issue of whether the plaintiff was in the exercise of due care immediately prior to and at the time of the accident. (See *McElroy v. Force* (1968), 38 Ill. 2d 528, 232 N.E.2d 708; *Casey v. Chicago Railways Co.* (1915), 269 Ill. 386, 109 N.E.2d 984; *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774; *City of Chicago v. Doolan* (1900), 99 Ill. App. 143.) The essential thrust of these holdings has been that in such situations, where no better evidence on the issue is available, habit evidence is admissible in order to give the plaintiff a fair chance to prove his freedom from contributory negligence. This rule of necessity, however, does not extend beyond its own reason. Where there are available competent witnesses who have observed and can relate enough of the circumstances of the accident so as to form a sufficient basis from which the trier of fact might reasonably infer the exercise of or failure to exercise due care by the plaintiff, habit

evidence, being unnecessary, should not be admitted. *Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12; *Peltz v. Chicago Transit Authority* (1975), 31 Ill. App. 3d 948, 335 N.E.2d 74; *Driessens v. Verkruyse* (1964), 46 Ill. App. 2d 87, 196 N.E.2d 353.

In the present case, the plaintiff testified that she last remembered standing in the westbound lane of Belmont Avenue, about a foot or so *north* of the center line. From this, one could reasonably infer, as indeed the plaintiff clearly hoped the jury would, that it was at that point, in the westbound lane, where the plaintiff was struck down. If this were in fact the case, it would have been almost conclusively determinative of the absence of contributory negligence on the plaintiff's part. As the Illinois Supreme Court, in a similar situation, said in *Plank v. Holman*:

> "Whether plaintiff may be considered an eyewitness to the accident is determined by the circumstances she observed. If the plaintiff could relate circumstances from which the decedent's behavior and operation of his automobile might be reasonably inferred, she may be termed an 'eyewitness.' (See: *Elliot v. Elgin, Joliet & Eastern Railway Co.*, 325 Ill. App. 161.) It is not necessary that an eyewitness see everything that occurred at the accident scene. Although the plaintiff did not see all three automobiles involved immediately before the accident, she could determine the location of her husband's auto in relation to the center line of the highway. The location of decedent's automobile at impact would be almost conclusively determinative of the issue of the negligence of the defendants and the lack of decedent's contributory negligence." 46 Ill. 2d 465, 469, 264 N.E.2d 12, 14.

Other cases in which habit testimony has been admitted on the basis of the plaintiff's amnesia and the lack of other eyewitnesses are distinguishable in that in those cases the plaintiff was rendered incapable of testifying as to the facts leading up to the accident sufficiently to form a reasonable basis for an inference that he was in the exercise of due care through the time of the accident. See *Eichorn v. Olson* (1975), 32 Ill. App. 3d 587, 335 N.E.2d 774; *Baker v. Norfolk & Western Ry. Co.* (1970), 120 Ill. App. 2d 296, 256 N.E.2d 887.

Further, the defendant, called by the plaintiff as an adverse party witness, testified at length as to his own observation of the entire series of relevant events, including the conduct of the plaintiff. It is doubtful that, if the defendant were the only witness able to relate any of the facts just prior to or during the accident, the plaintiff would be compelled to rely for proof of her own due care solely on the testimony of the defendant, to the exclusion of any evidence of the plaintiff's pertinent habits. However, in this case, the plaintiff chose to call the defendant as a witness, albeit an adverse one, and elicited from the defendant direct testimony as to the

plaintiff's due care. In the absence of sufficient contradictory evidence, that testimony would be properly viewed as binding on the plaintiff. This, considered together with the plaintiff's own testimony as at least a partial "eyewitness" is sufficient to remove any need for secondary evidence regarding the plaintiff's habits of care.

■■ We thus conclude that the trial court properly ruled in excluding the proffered habit evidence. It follows directly that there was no error in the court's refusal to instruct the jury regarding the inferences which it might draw from such evidence. See *Herget National Bank v. Zeeck* (1971), 132 Ill. App. 2d 995, 271 N.E.2d 84.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.