THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.*
CRYER E. BRYANT *et al.*, Defendants-Appellees.

Third District   No. 77-411

Opinion filed August 22, 1978.—Rehearing denied September 28, 1978.

William J. Scott, Attorney General, of Springfield (John A. Hayner and Roy E. Frazier, Jr., Assistant Attorneys General, of counsel), for appellant.

Robert H. Adcock and John W. Hynds, both of Morris, for appellees.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

This is an eminent domain proceeding filed by the Department of Transportation of the State of Illinois to condemn a certain parcel of land owned by Cryer Bryant and Lorraine Bryant, his wife. After a jury trial judgment was entered for $29,500. The Department has appealed.

The property which is the subject of this action is a parcel located on Division Street in Morris, Illinois. It has a 60.41-foot frontage on Division Street, is 123 feet deep, and was improved with two cement house trailer pads.

On this appeal the Department argues, one, the court erred in denying petitioner's motion to limit valuation witnesses and prior pretrial disclosure of similar sales to be relied on; two, the trial court erred in denying petitioner's motion in limine to exclude any mention of an offer to purchase received by defendants; three, the trial court erred in granting defendants' motion in limine to exclude mention of the length of time the subject property had been zoned commercial; four, the court erred in giving defendants' special interrogatory and in modifying the award of the jury by virtue of the jury's answer to the special interrogatory.

With respect to the Department's first claim of error, it appears that on

April 19, 1977, the Department moved to require all parties to complete their discovery before April 26, 1977. This motion was made after this case and several others had been placed on the May call. In particular, the motion requested that valuation witnesses be limited to those disclosed to the opposite party, together with their written appraisals, prior to April 26. The motion also requested that the use of similar sales which the parties or their appraisers intended to rely on be limited to those which had been disclosed and approved prior to such date. The court denied the motion.

■■■ Although the Department urges the court's ruling was erroneous, nevertheless, it has not directed to our attention how the order of the court was unfairly prejudicial to the Department or how the presentation of the case was prejudiced by the order. As pointed out in the Illinois Institute of Continuing Legal Education Handbook on Illinois Eminent Domain Practice (1975), section 419:

"Fourteen days prior to trial, it is advisable to move to limit value opinion witnesses and similar sales to those which have been disclosed to date. The purpose is to avoid last minute 'surprises,' and such motions are generally allowed. Thereafter, only the value witnesses whose names have been disclosed, and the similar sales which have been described, may be offered in evidence at the trial. The court still has discretion to admit additional evidence, but a positive and adequate showing of (1) good faith, (2) materiality, and (3) diligence would be required.

This is a valuable technique to bring discovery up to date. It is also useful to prevent abuse of the discovery process by withholding disclosure of material evidence until just before trial."

We believe the foregoing observations describe a practice which should be followed and that such a motion should be granted unless some reason for a contrary ruling is affirmatively shown. (*Department of Transportation v. Prombo*, 63 Ill. App. 3d 407.) However, in the absence of any prejudice the error is harmless.

Next, the Department argues the court erred in permitting evidence of an offer to purchase the subject property made seven or eight years prior to the filing of the petition in this case.

Shortly before trial, the Department filed its motion in limine requesting that evidence of offers to purchase the subject property be excluded. During discovery it was revealed that an offer of purchase had been made to the present owners seven or eight years earlier, but had been refused. The court ruled that offers of purchase made within five years should be excluded because there were no such offers, but reserved its ruling on the offer made seven or eight years earlier.

During the presentation of the appellee's case, James Peacock, an attorney, and Cryer Bryant, one of the owners, testified that in 1968 or 1969 Peacock had offered to purchase the property in behalf of his client. Peacock's offer of $15,000 was declined. According to Peacock, the offer was made in behalf of an adjacent property owner who conducted a business on the abutting lot and who intended to use the subject property as a parking lot for his business. The Department objected to the evidence of this offer of purchase both because it was remote in point of time and because the "special value" to the offeror prevented such offer from having any relevance to fair cash value. The court overruled the Department's objections to this testimony.

■■ The rule is well settled that sales of other property may be appropriately considered in determining the fair cash market value of property taken in an eminent domain proceeding. Consideration of other sales of property is one of the primary factors considered by an appraiser in arriving at values of other property. What effect sales of other property should have on establishing the value of a particular piece of property is a question of relevance. For another sale to be relevant, the sale should be bona fide, voluntary, within a reasonable period of time, and the property sold should have sufficient similarity in location and physical features that extrapolation is practical. (*Metropolitan Sanitary District v. Industrial Land Development Corp.*, 121 Ill. App. 2d 393, 257 N.E.2d 532.) While an offer to purchase a subject property is not a comparative sale, such an offer may be relevant if it meets, to the extent practical, standards comparable to those applicable to sales of other property. Since by their nature offers of purchase are not completed transactions, their relevance depends on a close scrutiny of the underlying and surrounding circumstances.

Where the buyer of property purchases property because of its unique or special value to him, such as where the property is to be used in connection with a business conducted on an adjoining property, the buyer is not considered to be the hypothetical buyer described in the formula establishing fair cash market value. (*Trustees of Schools v. Chicago City Bank & Trust Co.*, 126 Ill. App. 2d 302, 262 N.E.2d 80.) He is not a buyer under no compulsion to purchase, but on the contrary is quite different from all other buyers or prospective buyers.

■■ It is undisputed that the offer to purchase communicated by Attorney Peacock to Bryant was for a special purpose, that is, for use by the abutting property owner in connection with his business. This property had a special value for the buyer at least at the time the offer was made and under these circumstances, such an offer can have no tendency to prove the future cash market value of the property. This offer of purchase should not have been admitted.

■■ Our conclusion with respect to the inadmissibility of the offer to

purchase is further supported by our opinion the offer was too remote in point of time to have any relevance to the issues in this case. To try and relate the effects of inflation and other variables to the value of this property over a period of eight years depends on conjecture and speculation. Even though there may have been general inflation over the period, such inflation affects different properties differently and there is no acceptable way of evaluating other variables that may have intervened. We believe the trial court not only erred in admitting the evidence of the offer to purchase, but that its admission was prejudicial and unfairly affected the jury's determination of fair cash market value. The owner argued the offer established the value of his property at the time it was made and the opinions of value in behalf of the owner relied on such determination.

This brings us to the Department's argument the court erred in refusing to permit the Department to elicit the fact that the zoning of the property from residential to commercial use had occurred three days prior to the filing of the petition. The owner's motion in limine requested the court to preclude the Department from revealing that the commercial zoning classification had been in effect for only three days prior to the filing of the petition. The trial court granted the motion.

It is undisputed that in determining the fair cash market value of condemned property, the value depends on the highest and best use of the property. The applicable zoning is a relevant factor in determining the highest and best use of the property, but the applicable zoning is not conclusive on this issue. (See, *e.g., Department of Public Works & Buildings v. Rogers,* 39 Ill. 2d 109, 233 N.E.2d 409, indicating that the highest and best use is not limited to applicable zoning, but may be affected by the reasonable probability of rezoning in the future.) The applicable zoning is only one of the factors in determining the highest and best use of property, since it well may be that premises are entirely unsuited for particular uses even though such uses are permitted by the zoning. It is also true that where the actual use of the premises is not in accord with the use permitted by zoning, the actual use may well be the highest and best use of the property. For example, if property is zoned for commercial use, but is not and has not been used for such purpose, the question of whether the highest and best use of the property is commercial depends not only on the zoning, but also on the reasonable probability the property is suited and will be used for commercial purposes within such time as to affect its present value.

■■ In the instant case, at the time of the filing of the petition or prior thereto, the property was not actually used for commercial purposes. Where the actual use of premises is different from the use permitted by the applicable zoning, we think that the length of the period of the zoning is relevant both in determining the highest and best use of the premises

and the effect permissible uses may have on the value of the property. We believe the trial court erred in excluding evidence of the length of the period the property was zoned for commercial purposes.

Finally, the Department argues the court erred in giving the special interrogatory and then modifying the jury's verdict on the basis of their response to the special interrogatory.

Over the objection of the Department the court submitted the following special interrogatory:

> "Do you find from your consideration of all the evidence that the highest and best use of the defendants property on March 11, 1976, was for business purposes?"

The jury responded affirmatively to the special interrogatory and also returned its general verdict determining the just compensation for the property taken to be $25,000. After the jury's verdict was returned, the court increased such verdict by $4,500 and entered judgment for $29,500. The reason for increasing the judgment was the court's holding that because the owner's appraiser had testified the highest and best use of the property was for commercial purposes and its fair cash market value was $29,500, the judgment should be for an amount equal to his appraisal.

Section 1 of the Eminent Domain Act (Ill. Rev. Stat. 1975, ch. 47, par. 1) provides:

> "Private property shall not be taken or damaged for public use without just compensation; and that in all cases in which compensation is not made by the state in its corporate capacity, * * * such compensation shall be ascertained by a jury, as hereinafter prescribed. Where compensation is so made by the state, * * * any party upon application may have a trial by jury to ascertain the just compensation to be paid."

The Civil Practice Act in section 65 (Ill. Rev. Stat. 1975, ch. 110, par. 65) states:

> "The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact stated to them in writing."

■■ It is generally recognized that the function of the special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact and is a check upon the deliberations of the jury. (*Sommese v. Maling Brothers, Inc.*, 36 Ill. 2d 263, 222 N.E.2d 468.) Special interrogatories are used for the purpose of testing the general verdict against the jury's conclusions as to the ultimate controlling facts. (*Wise v. Wise*, 22 Ill. App. 2d 54, 159 N.E.2d 500.) Whether a fact is an ultimate fact depends upon its effect on the issue which the jury is required to resolve. To be an ultimate fact, the fact must be one that controls the general verdict. This means that if the special interrogatory is

answered one way, it would then require the general verdict to be decided in a particular way. See *Chicago v. Northwestern Ry. Co. v. Dunleavy,* 129 Ill. 132, 22 N.E. 15.

In support of the trial court's action, the owners rely on *North Shore Sanitary District v. Schulik,* 12 Ill. 2d 309, 146 N.E.2d 25, which was also the case relied upon by the trial court. This is the only case called to our attention in which a special interrogatory was given in an eminent domain proceeding. In *North Shore* the property condemned was an easement for a sewage line and the special interrogatory sought to elicit whether there was any depreciation in the value of the servient tenement resulting from the easement. The court approved the special interrogatory because without depreciation there could be no substantial damage to the rights of the owners and concluded under the facts of that case that the subject of the special interrogatory was an ultimate fact.

■■ When the foregoing rules are applied to the instant case, we believe the question concerning the highest and best use of the property was an evidentiary fact and not an ultimate fact. Consequently, we believe the special interrogatory was erroneously given. The highest and best use of property is only one of many factors which are appropriately considered in determining just compensation. That the response to the interrogatory did not establish a controlling fact is demonstrated by our observation that the jury's award of $25,000 could have been sustained by the evidence even if the jury had found the highest and best use was not for business purposes. Such a conclusion assumes there were no other errors in the determination of just compensation and is based on the usual role that the jury is permitted to determine the credibility of the appraiser's testimony and the reliability of the various factors which he might have considered in such an appraisal.

■■ If it was the jury's function to consider all aspects of the appraisal opinion, then it was error for the trial court to increase the jury's verdict to the value based on an appraisal. Although such an increase is consistent with the trial court's reason for giving the special interrogatory in the first place, such procedure also demonstrates that the highest and best use in itself is not a controlling factor unless one may thereby disregard all other evidence of value, a hypothesis which we reject.

For the foregoing reasons the judgment of the circuit court of Grundy County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

ALLOY and STENGEL, JJ., concur.