MITCHELL VULETICH, Plaintiff-Appellant, *v.* LOIS BOLGLA, Adm'x of the
Estate of Dr. J. H. Bolgla, Deceased, Defendant-Appellee.

First District (5th Division)   No. 79-89

Opinion filed May 30, 1980.—Rehearing denied July 15, 1980.

Lawrence L. Kotin, of Chicago (Lawrence L. Kotin and Michael W. Rathsack, of counsel), for appellant.

William V. Johnson, of Johnson, Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff brought this medical malpractice action against Dr. Bolgla and several others to recover for injuries he suffered during a corrective eye surgery which resulted in a partial paralysis of his right side. Dr. Bolgla died before trial, and defendant was appointed special administratrix. The various other defendants were dismissed before trial. At the close of all the evidence, a jury returned a verdict in defendant's favor and this appeal followed. On appeal, plaintiff contends that: (1) habit testimony was improperly admitted at trial; (2) the trial court erred in prematurely giving a *Prim* instruction (*People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S.Ct. 2731) to the jury; and (3) a special interrogatory submitted to the jury was ambiguous and improper in form. We reverse and remand for a new trial.

On July 5, 1973, plaintiff had surgery performed on his left eye to correct a muscle disorder which allowed his eye to wander and turn out. After surgery, he was paralyzed on his right side and at the time of trial, he had a spastic rightsided paralysis of 50 percent in the right shoulder, a loss of fine finger movement in his right hand, an inability to heel gait on the right side, a right circumductive walk, and a right sided numbness. Plaintiff alleged that these conditions were the result of certain of Dr. Bolgla's negligent acts.

Dr. Bolgla was the anesthesiologist during plaintiff's operation. As the case was submitted to the jury, plaintiff claimed that Dr. Bolgla was negligent in failing to watch and record plaintiff's breathing during the administration of the anesthetics or in allowing a respiratory depression to occur to plaintiff as a result of the administration of the combination of anesthetics.

The evidence at trial conflicted as to the cause of plaintiff's resulting condition. Dr. Harris, an anesthesiologist, testified that after reviewing

plaintiff's hospital records, Dr. Bolgla's anesthesiology records of plaintiff and others, and depositions of certain people, it was his opinion that a respiratory depression had occurred during plaintiff's operation. He stated that plaintiff's symptoms were the result of asphyxial (characterized by suffocation) brain damage which probably occurred over a five- to 12- minute period. He testified that Dr. Bolgla's failure to chart plaintiff's respiration during the operation suggested that he may have been casual in his observation of the breathing. He concluded by saying that had Dr. Bolgla placed his hand on plaintiff's chest to monitor respiration, the parties "wouldn't be here today."

Dr. Gerol, a neurosurgeon, testified that in his opinion hypoxia (lack of oxygen) occurred during the administration of the anesthesia which resulted in plaintiff's paralysis. He thought that Dr. Bolgla was taking plaintiff's blood pressure but not watching his breathing.

Dr. Brunner, an anesthesiologist, testified that Dr. Bolgla's performance at the surgery met the prevailing standards of good medical conduct. He stated that a review of Dr. Bolgla's chart revealed no evidence that hypoxia occurred during surgery and that the records actually indicated the opposite.

Dr. Pawl, a neurosurgeon, testified that plaintiff's problem was not caused by hypoxia but was due to a vascular problem. He believed that plaintiff had suffered a stroke, the cause of which was unknown.

Dr. Tobias, a neurosurgeon who had examined plaintiff shortly after the surgery, testified that plaintiff had suffered hemiparesis (muscular weakness affecting one side) and that he did not know if the condition was permanent. He did not consider a global oxygen loss to be a logical explanation of plaintiff's condition. He felt that the most likely cause would be a spasm of the blood vessel to the brain.

Based on the foregoing expert testimony the critical question was whether hypoxia had occurred during the operation and whether Dr. Bolgla was negligent in failing to detect it presumably because of his failure to properly monitor plaintiff's respiration. Dr. Liao, Nurse Flynt and Nurse Foxworth were the only persons who were present at plaintiff's surgery and who testified at trial. A third nurse who was at the surgery did not appear as a witness, and there is no indication in the record as to what she could relate about the circumstances of the surgery.

Dr. Liao, the opthalmologist who performed the actual ocular surgery, testified that nothing unusual happened during surgery and he did not have to stop because plaintiff moved. During surgery it is the anesthesiologist's job to monitor breathing which can be done by watching the drape over the patient or watching an electrocardiogram monitor. Dr. Bolgla did not report anything unusual about plaintiff's

breathing during the operation, and to his knowledge, the operation was perfectly normal. Plaintiff was breathing normally after the surgery.

Nurse Flynt was the operating room technician during surgery and assisted Dr. Liao. During surgery a tube connected to plaintiff's nose supplied oxygen to plaintiff. At one point plaintiff's head moved slightly and the surgery was stopped. She did not know if any respiratory difficulty was noticed. She did not know what Dr. Bolgla did, but when plaintiff quieted down, he said "You can proceed." Plaintiff was breathing at that time and his breathing was not unusual, labored or out of the ordinary for that type of operation. Later that afternoon Dr. Bolgla told her that something had happened to plaintiff but that he did not know what.

Nurse Foxworth testified that she was a scrub nurse for plaintiff's surgery but she did not have a specific recollection of the operation. She assumed that she was present because her name appeared on the chart. She had been a scrub nurse on past occasions when Dr. Bolgla had been the anesthesiologist and Dr. Liao had been the surgeon. Over plaintiff's objection, she testified that Dr. Bolgla had a particular practice and method of monitoring a patient's respiration during surgery when the anesthetic in question was being used and that he usually followed that practice. To her knowledge Dr. Bolgla did not deviate from this practice during plaintiff's surgery.

She testified that his custom was to secure tubing from the anesthesia machine to the patient's chest so that the patient could breathe. He would watch the patient's respiration and tell him to breathe. He would also place his hand on the patient's chest to see if he was breathing.

An instructions conference was held at 9:45 a.m. followed by closing argument and the charge to the jury. At about 8 p.m., after nine hours of deliberation, the foreman informed the court that they were close to a verdict and that, if given some time, they could reach a verdict. At about 8:15 p.m. the court gave the *Prim* instruction over plaintiff's objection. At 8:55 p.m. the jury returned a verdict for defendant.

The jury also answered in the negative a special interrogatory asking "Was the decedent, Dr. Bolgla, guilty of negligence at and/or immediately prior to that occurrence and, if so, was that negligence the proximate cause of the plaintiff's injuries." Judgment was entered on the verdict and plaintiff brought this appeal.

OPINION

I.

Plaintiff contends that the trial court committed reversible error when it allowed Nurse Foxworth to testify concerning Dr. Bolgla's

normal surgical procedures during operations like plaintiff's since there was direct evidence of the events of this surgery provided by eyewitnesses and by Dr. Bolgla's anesthesiology chart. Defendant submits that the challenged testimony was presented in response to plaintiff's attempt to establish Dr. Bolgla's customary practice by studying charts from his prior surgeries. In addition, she contends that no eyewitness testified concerning the crucial question of whether Dr. Bolgla monitored plaintiff's respiration during the surgery.

■■ Generally, a court will not consider evidence that a person has, or has not, done a certain act at a particular time as probative of a contention that he has, or has not, done a similar act at another time. (*Bevelheimer v. Gierach* (1975), 33 Ill. App. 2d 988, 995, 339 N.E.2d 299; *Herget National Bank v. Johnson* (1974), 21 Ill. App. 3d 1024, 1026, 316 N.E.2d 191; 29 Am. Jur. 2d *Evidence* §316 (1967); see Illinois Pattern Jury Instructions, Civil, No. 10.08, comment (2d ed. 1971).) A well-recognized exception to the general rule applies in wrongful death cases where there are no eyewitnesses to the accident. In those cases, evidence of a plaintiff's pertinent habits may be admitted on the issue of whether he was in the exercise of due care immediately prior to and at the time of the accident. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 245, 302 N.E.2d 257; *McElroy v. Force* (1967), 38 Ill. 2d 528, 534, 232 N.E.2d 708; *Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 997, 365 N.E.2d 43.) However, the exception is one of necessity for in the absence of direct or better evidence on the issue, habit testimony is the only way a plaintiff can prove freedom from contributory negligence. (*Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 997-98.) In addition, evidence of a defendant's careful habits may be admitted in the proper case. See *McElroy v. Force* (1966), 75 Ill. App. 2d 441, 449-51, 220 N.E.2d 761, *aff'd* (1967), 38 Ill. 2d 528, 232 N.E.2d 708; *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 337, 250 N.E.2d 159; *Solomon v. The Fair* (1962), 36 Ill. App. 2d 188, 193, 183 N.E.2d 588.

Defendant initially contends that the introduction of the testimony of Dr. Bolgla's habits was proper since plaintiff introduced similar evidence of the doctor's customary or usual method of recording on anesthesia charts to establish a deviation from that procedure in the instant case. We reject this argument. The record is clear that the other charts were used for the limited purpose of acquainting the expert witnesses with Dr. Bolgla's standard method of recording in order to insure an accurate interpretation of plaintiff's chart. In admitting the charts into evidence, the court expressly limited their use for this purpose and it is clear that they were not used to establish Dr. Bolgla's habits or customs in recording the charts.

Defendant's second assertion is that the habit testimony was properly

admitted because there were no eyewitnesses to Dr. Bolgla's actions during the operation, nor was there any testimony regarding his action during the critical period wherein he allegedly failed to perform an act he should have done. Because of the absence of eyewitnesses to the critical period, defendant argues that the habit testimony was proper to show what Dr. Bolgla customarily did. The supreme court set forth the test to determine whether a person may be considered an eyewitness to an event in *Plank v. Holman* (1970), 46 Ill. 2d 465, 469, 264 N.E.2d 12. Applying that standard to the instant case, whether the persons in the operating room may be considered "eyewitnesses" in this case is determined by the circumstances they observed. It is not necessary for the three witnesses to have seen everything that Dr. Bolgla did during the operation as long as they could relate circumstances from which his behavior and actions at the critical time could be inferred and which would be almost "conclusively determinative" of the issue of his negligence or lack thereof at that time. *Plank v. Holman* (1970), 46 Ill. 2d 465, 469; see *Gasiorowski v. Homer* (1977), 47 Ill. App. 3d 989, 998, 365 N.E.2d 43.

■■ In the instant case, none of the witnesses testified concerning Dr. Bolgla's acts in monitoring plaintiff's breathing during the precise time of the possible hypoxia. Although the witnesses did not relate everything that Dr. Bolgla did during the operation, they related enough circumstances so that the jury could infer whether he was monitoring plaintiff's breathing during the critical period. Dr. Liao testified that the electrocardiogram machine reading would reflect any change in plaintiff's breathing rhythm and that it was the anesthesiologist's duty to monitor that reading. Nurse Flynt also testified that plaintiff was breathing when he moved on the table (at which time Dr. Harris testified the hypoxia had already occurred) and that he continued to breathe afterwards. From the testimony of these two witnesses a jury could infer that Dr. Bolgla had been monitoring plaintiff's respiration at the time of the "accident" and was not negligent in any manner. Because of this the two qualify as "eyewitnesses" so as to preclude the introduction of the evidence of Dr. Bolgla's habits.

In addition, the anesthesiologist's chart was additional direct evidence from which a jury could infer whether Dr. Bolgla was negligent in his monitoring of plaintiff's breathing. Two experts, Dr. Harris and Dr. Brunner, each reviewed the chart and interpreted it. Dr. Harris was of the opinion that Dr. Bolgla's failure to chart plaintiff's respiration indicated that he may have been casual in his observations, while Dr. Brunner opined that Dr. Bolgla's performance met the prevailing standards. It was unnecessary to resort to use of habit testimony in view of the additional information about the instant surgery provided by the chart.

■■ Finally, had there been no eyewitnesses, we do not feel that Nurse

Foxworth's testimony as to Dr. Bolgla's usual habits should have been admitted in this case. The testimony concerning plaintiff's surgery established that because of the particular anesthetic used, a tube was placed in his nose to enable him to breathe instead of placing the tube in his trachea, a procedure known as intubation. Nurse Foxworth testified that the usual procedure when using that particular anesthetic was to put a tube from the anesthesia machine "on the patient's chest so that the patient could breathe during the procedure" and to secure the tubing with tape. Besides an inability to recall plaintiff's surgery, she did not correctly identify the proper respiratory aid used when employing the particular anesthetic. The method described by Nurse Foxworth seems to be intubation. Dr. Bolgla's usual procedure in monitoring a patient's respiration when intubation is used may have differed from his procedure when the tube is placed in the patient's nose as was done here. If so, the normal procedure in that situation would be irrelevant to the instant surgery and Nurse Foxworth's testimony should have been excluded, since it did not appear that the witness was describing Dr. Bolgla's procedure under identical circumstances. Because the habit testimony concerned the crucial issue in the case, whether Dr. Bolgla properly monitored plaintiff's breathing, its admission can only be considered reversible error.

II.

Plaintiff's second contention is that the trial court's giving of the *Prim* or deadlocked jury instruction was premature since the jury foreman did not indicate that the jury was deadlocked but rather informed the court that a verdict could be reached if the jury were given more time. Because this cause must be reversed and remanded for a new trial, it is unnecessary to address this issue since it is unlikely to arise again upon retrial.

III.

Plaintiff contends that the special interrogatory was ambiguous since it does not define the scope of the term "occurrence" which could have encompassed the entire surgical procedure or the period of post-operative care. He asserts that the inquiry whether Dr. Bolgla was negligent "at" the occurrence could only confuse the jury since there could have been times when he was not specifically negligent but his entire conduct could still constitute malpractice if he failed to perform certain acts at critical times. He submits that the interrogatory suggests that there must be a " 'continuing' guilt" during the entire occurrence before Dr. Bolgla may be found guilty of negligence. In addition, plaintiff asserts that the interrogatory asks for a finding on an evidentiary fact rather than on ultimate fact and that a negative answer to it would not necessarily be inconsistent with a general verdict for plaintiff.

■■ Defendant urges that plaintiff has failed to preserve this issue for review since he did not specifically object to the interrogatory for the same reasons as he urges on appeal. To preserve an objection to a special interrogatory one must set it forth with enough specificity so that the trial court is advised of the specific nature of the objection. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 387, 385 N.E.2d 664; Ill. Rev. Stat. 1977, ch. 110A, par. 239.) In the instant case, plaintiff objected because Dr. Bolgla "could be guilty of negligence immediately prior to the occurrence of the hypoxia and not at the time of the occurrence of the hypoxia." The objection shows that plaintiff objected to the vagueness of the word "occurrence" and the time span under consideration. This objection is nearly identical to that raised on appeal and was clearly sufficient to preserve the issue for review.

We find that the word "occurrence" contained in the special interrogatory was sufficiently clear to focus the jury's consideration to the critical period in question rather than to allow them to consider other irrelevant times. Special interrogatories must be considered together with and in light of other instructions of the court. (*Sellers v. Hendrickson* (1977), 46 Ill. App. 3d 549, 559, 360 N.E.2d 1235; see *Havlovic v. Scilingo* (1972), 7 Ill. App. 3d 918, 922, 289 N.E.2d 79.) A separate instruction given to the jury set forth the allegedly negligent acts of Dr. Bolgla as follows:

"The plaintiff claims that he was injured and sustained damage, and that the defendant, Dr. J. H. Bolgla, was negligent in one or more of the following respects:

(a) In failing to watch and record the plaintiff's breathing during the administration of the combination of anesthetics known as Innovar, Demurol and Vistaril;

(b) In allowing a respiratory depression to occur to the plaintiff as a result of the administration of the combination of anesthetics known as Innovar, Demurol and Vistaril, for a period of time sufficient to cause brain damage."

■■ When this instruction is considered in conjunction with the special interrogatory, it is clear that the jury was to limit its consideration of Dr. Bolgla's alleged negligence to the time of the administration of the anesthetics, specifically during the time of the surgical procedure, and not to consider possibly negligent conduct during the post-operative period or other irrelevant times. The special interrogatory was sufficiently clear as to what the "occurrence" in question was and the time of the alleged negligence at issue.

■■ The function of a special interrogatory is to require the jury's determination as to one or more specific issues of ultimate fact and is a check on the deliberations of the jury which tests the general verdict against the jury's conclusions as to the ultimate controlling facts.

(*Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 267, 222 N.E.2d 468; *Department of Transportation v. Bryant* (1978), 63 Ill. App. 3d 483, 488, 380 N.E.2d 464.) When read in conjunction with the other instructions, the special interrogatory related to the ultimate issue in the case, Dr. Bolgla's alleged negligence during the operation, and would control the general verdict. Alternative answers to this interrogatory and a general verdict would necessarily be inconsistent. The special interrogatory was therefore proper in form and was properly given in this case.

Accordingly, the judgment of the circuit court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.